United States District Court
Southern District of Texas

**ENTERED**

May 26, 2020

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LISA K. BUNNER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-18-1820 |
| | § | |
| DEARBORN NATIONAL LIFE | § | |
| INSURANCE COMPANY, et al., | § | |
| | § | |
| Defendants. | § | |

### <u>MEMORANDUM AND RECOMMENDATION</u>

Pending before the court[1] are Defendants' Motion for Summary Judgment (Doc. 96) and Plaintiff's Corrected Motion for Judgment (Doc. 103). The court has considered the motions, the responses, the replies, all other relevant filings, and the applicable law. For the reasons set forth below, the court **RECOMMENDS** that Defendants' Motion for Summary Judgment be **GRANTED IN PART AND DENIED IN PART** and Plaintiff's Motion for Judgment be **DENIED**.

## I.  Case Background[2]

This lawsuit arises from the denial of long-term disability benefits contained in Plaintiff's employee welfare benefit plan. It is undisputed that the plan is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, et seq.

---

[1]    This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. <u>See</u> Doc. 30, Ord. Dated Oct. 2, 2018.

[2]    The majority of the court's citations to evidence will be to the administrative record, which is contained in docket entries 81-85. The court will cite to the administrative record as "AR" followed by the pincite.

In August of 2015, Plaintiff began to experience numbness and throbbing in her left hip and leg.[3]  A subsequent MRI revealed a tumor in the right parietal opercular region of Plaintiff's brain.[4]  On September 2, 2015, Plaintiff underwent a right parietal craniotomy and resection of the tumor.[5]  Following the tumor removal, Plaintiff received radiation therapy which was completed in December 2015.[6]  Plaintiff then began chemotherapy that ended in December 2016.[7]

On December 10, 2015, Kyle R. Noll, Ph.D. ("Dr. Noll"), conducted a neuropsychological evaluation of Plaintiff.[8]  Dr. Noll found that Plaintiff had "isolated impairments in verbal learning and memory and poor initial encoding of visual information."[9]

On October 5, 2016, Dr. Noll conducted a second neuropsychological evaluation of Plaintiff.[10]  Dr. Noll found that Plaintiff had impairments in learning and memory and reduced upper extremity dexterity.[11]  Dr. Noll also noted that Plaintiff's

---

[3]    AR 2194.

[4]    Id.

[5]    AR 2581.

[6]    Id.

[7]    AR 2589.

[8]    See AR 2187-97, 2537.

[9]    Id.

[10]   Id.

[11]   Id.

attention, working memory, and left hand dexterity had declined since the December 10, 2015 evaluation.[12]

One week later, Plaintiff began her employment with Situs Group, LLC ("Situs"), on October 11, 2016.[13] In October 2016 after beginning her employment, Plaintiff attended a benefits orientation that was conducted by Situs's Benefits Coordinator, Kyndria Perkins ("Perkins").[14] According to Plaintiff, a representative of Dearborn National Life Insurance Company ("Dearborn National") was present at the October 2016 benefits orientation.[15] Plaintiff alleges that at that orientation, Perkins told Plaintiff and others present that they were eligible for benefits even if they had a pre-existing condition and no questions would be asked about their prior health history.[16] The Dearborn National representative did not correct Perkins' statements.[17]

Following the October 2016 benefits orientation, Plaintiff sought to sign up for employee benefits. According to Plaintiff, she had a choice between enrolling as a new hire or waiting until open enrollment began later in the year.[18] Plaintiff intended to

---

[12]   Id.

[13]   See AR 847.

[14]   AR 848.

[15]   Id.

[16]   Id.

[17]   Id.

[18]   Id.

wait until the open enrollment period.[19]   However, when Plaintiff looked at the enrollment forms, Plaintiff noticed that questions relating to her prior health history were present.[20]   As this was inconsistent with representations made to her at the benefits orientation, Plaintiff inquired about the issue with Perkins and the Situs Recruiting Coordinator, Jolene Turner ("Turner").  Turner and Perkins told Plaintiff that she would only have benefits without pre-existing condition exclusions if she enrolled as a new hire.[21]   Relying on that representation, as well as the representations at the benefits orientation, Plaintiff signed up for benefits as a new hire and paid premiums retroactive to the date of her employment.[22]

Plaintiff's disability benefits were governed by two plans, the Short-Term Disability ("STD") Plan and the Long-Term Disability ("LTD") Plan (collectively, the "Plans").[23]   The Plans were issued by Dearborn National to Situs.[24]   Situs was the plan administrator of the Plans.[25]   Situs delegated the claims administration of the

---

[19]   Id.

[20]   Id.

[21]   Id.

[22]   Id.

[23]   AR 2, 252.

[24]   AR 3, 253.

[25]   Id.

Plans to Dearborn National.[26]

After enrolling in the Plans, Plaintiff continued to experience a cognitive decline and had trouble completing her work in a timely fashion.[27] Plaintiff had particular trouble with organization, multitasking, forgetfulness, and time management.[28] As a result, Plaintiff applied for STD benefits on February 23, 2017, and took a leave of absence that began on March 10, 2017.[29] Plaintiff estimated that she would be able to return to work on August 28, 2017.[30]

On April 6, 2017, Defendants initially informed Plaintiff that her STD benefits were denied under the STD Plan's pre-existing condition exclusion.[31] However, after an internal discussion about the representations made at the October 2016 benefits meeting, Defendants agreed to waive the pre-existing condition exclusion for Plaintiff's STD claim.[32] On April 12, 2017, Defendants informed Plaintiff via letter that her STD claim was approved for a period of March 25, 2017, to August 28, 2017.[33]

---

[26]    AR 4, 254.

[27]    AR 847.

[28]    Id.

[29]    AR 210.

[30]    Id.

[31]    See AR 122-125.

[32]    See AR 749-754.

[33]    See AR 739-741.

On August 1, 2017, Plaintiff informed Defendants that it was possible that she would not return to work on August 28, 2017, as originally anticipated.[34]  On August 23, 2017, Plaintiff confirmed that she did not know how much longer she would need to be out of work.[35]  As a result, Plaintiff's STD benefits were extended for the maximum duration of the STD policy, and her claim was transferred to Dearborn National's LTD department.[36]

Plaintiff's claim for LTD benefits was initiated in August 2017.[37]  Dearborn National denied Plaintiff's claim on September 25, 2017, based on the LTD Plan's pre-existing condition exclusion.[38]  Plaintiff was given 180 days to request a review of the decision in accordance with ERISA procedures.[39]  See 29 C.F.R. § 2560.503-1(h)(3)(i).  Plaintiff filed a timely request for review on March 22, 2018.[40]  This triggered a forty-five day decision window within which Dearborn Nation was to notify Plaintiff of its determination on review.  See 29 C.F.R. §§ 2560.503-1(i)(1)(i),(i)(3)(i).

---

[34]    See AR 2411-12.

[35]    See Doc. 100-9, Ex. 9 to Pl.'s Mot. for J., Aug. 23, 2017 Phone Conversation.

[36]    See AR 728-30.

[37]    See Doc. 1, Pl.'s Orig. Compl. p. 4.

[38]    See Doc. 2-2, Ex. B-1 to Pl.'s Orig. Compl., Sept. 25, 2017 Letter Denying Benefits.

[39]    See id.

[40]    See Doc. 2-2, Ex. B to Pl.'s Orig. Compl., Mar. 22, 2018, Request for Review.

On May 1, 2018, prior to the May 6, 2018, deadline, Dearborn National notified Plaintiff that it was extending the deadline by forty-five days to June 15, 2018, pursuant to ERISA regulations.[41] See id. Applicable ERISA regulations provided that if the plan administrator determined that special circumstances required an extension of time, the administrator would provide written notice to the claimant indicating the special circumstances and the date when a determination on review was expected. See id. The extension generally was not to exceed forty-five days, however, if the extension was due to the claimant's failure to submit requested information, then the period for making the determination on review could be tolled until the claimant responded to the request for additional information. See 29 C.F.R. §§ 2560.503-1(i)(4).

Defendants' extension letter explained that the extension was necessary because Defendants had not yet received all of Plaintiff's medical records that had been requested from Plaintiff's medical providers.[42] Defendants' extension letter also stated that the forty-five day extension period would be tolled until June 15, 2018, or until Dearborn National received the missing medical records.[43]

Plaintiff immediately informed Dearborn National that she

---

[41]    See Doc. 3-22, Ex. J to Pl.'s Orig. Compl., May 1, 2018, Extension Letter.

[42]    See id.

[43]    See id.

7

objected to the extension of the deadline and tolling of the extension period to await the receipt of records.[44]  On May 22, 2018, Dearborn National informed Plaintiff that it continued to wait for the receipt of her medical records from two medical providers and the extension period was tolled pending receipt of those records as outlined in the May 1st letter.[45]

The next day Plaintiff sent a letter repeating her objection to the deadline extension and tolling.[46]  Plaintiff also detailed how the additional documents Dearborn National sought were not material to Plaintiff's appeal.[47]  On May 31, 2018, Dearborn National responded to Plaintiff's letter and stated that, in a concession to Plaintiff's objection, it would cease pursuing the additional medical records despite believing the records would provide a full and fair review of Plaintiff's appeal.[48]  Dearborn National informed Plaintiff that the tolling of the extension period would be lifted on May 23, 2018, and the deadline for a decision was moved to July 12, 2018, forty-five days from May 23,

---

[44]    See Doc. 3-23, Ex. K to Pl.'s Orig. Compl., Pl.'s Resp. Letter to May 1st Extension Letter.

[45]    See Doc. 3-24, Ex. L to Pl.'s Orig. Compl., Defs.' May 22, 2018, Update Letter.

[46]    See Doc. 3-25, Ex. M to Pl.'s Orig. Compl., Pl.'s Resp. Letter to May 22nd Update Letter.

[47]    See id.

[48]    See Doc. 3-26, Ex. N to Pl.'s Orig. Compl. Defs.' May 31, 2018, Letter to Pl.

2018.[49]

Instead of waiting until July 12, 2018, for a decision on her appeal, Plaintiff filed this lawsuit on June 2, 2018.[50] Despite the filing of this lawsuit, Dearborn National continued the appeal review process and requested additional information from Plaintiff related to the appeal.[51] Plaintiff refused to provide any additional documentation, taking the position that she had exhausted her administrative remedies.[52] On August 14, 2018, using the medical records in its possession, Dearborn National rendered a final determination denying Plaintiff's benefits on the basis that Plaintiff was not disabled and, even if she were disabled, the pre-existing condition exclusion still applied.[53]

The dispute over when the administrative record would be deemed closed for purposes of the court's ERISA review prompted the court to order Plaintiff to file a motion to put this issue before the court for consideration. In the motion, Plaintiff argued that the administrative record closed on May 6, 2018, the date on which she believed she had exhausted her administrative remedies, or alternatively, on June 2, 2018, when she filed this lawsuit.[54]

---

[49]   See id.

[50]   See Doc. 1, Pl.' Orig. Compl.

[51]   See Doc. 21, Exs. 1, 2, & 3 to Defs.' Mot. for Extension of Time.

[52]   See Doc. 21, Exs. 4, 5, & 6 to Defs.' Mot. for Extension of Time.

[53]   See Doc. 21, Ex. 7, Defs.' Final Determination.

[54]   See id. pp. 16-17.

Defendants argued that the administrative record closed on August 14, 2018, when Dearborn National rendered its final determination.

On January 31, 2019, the court issued a recommendation regarding Plaintiff's motion.[55]  The court found that, on May 1, 2018, Dearborn National had validly extended its deadline to issue a final determination.[56]  Accordingly, Dearborn National had until June 15, 2018, to issue its final determination.[57]  The court also found that, because Plaintiff filed her lawsuit prior to June 15, 2018, Defendants' deadline was tolled and their final determination on August 14, 2018, was timely.[58]  Finally, the court noted that it considered the administrative record closed on August 14, 2018, when Dearborn National issued its final determination.[59]

However, due to Plaintiff's missed opportunity to supplement the administrative record based on her counsel's preemptive filing of this lawsuit, the court gave Plaintiff leave to remand to give Dearborn National a "fair opportunity" to review any supplemental material that Plaintiff would be submitting to the court for its ERISA review.[60]  The court deemed forty-five days to be a reasonable period for Dearborn National to consider any supplemental material

---

[55]   See Doc. 44, Mem., Recom., & Ord. Dated Jan. 31, 2019.

[56]   See id. p. 8.

[57]   See id. p. 10.

[58]   See id. p. 9.

[59]   See id. p. 10.

[60]   See id. p. 11.

and make a determination on coverage.[61]

On February 14, 2019, Plaintiff filed objections to the court's recommendation and an alternative motion to remand in the event that her objections were overruled.[62]  On March 4, 2019, the court's recommendation was adopted and this action was stayed and remanded to Dearborn National for further review of any additional information.[63]

Plaintiff completed her supplementation of the administrative record on April 1, 2019, and advised Defendants accordingly.[64]  That gave Defendants until May 23, 2019, to complete their review and render a determination on coverage.  Defendants failed to render a determination on coverage within that time and, without requesting any leave from the court, unilaterally extended the deadline imposed by the court.[65]  In response, Plaintiff filed a motion to lift the stay on June 12, 2019.[66]

On July 5, 2019, the court issued an order on Plaintiff's motion to lift the stay.[67]  In the order, the court declined to lift

---

[61]    See id. p. 11 n.33.

[62]    See Doc. 45, Objs. to Mem., Recom., & Ord. Dated Jan. 31, 2019; Doc. 47, Motion to Remand.

[63]    See Doc. 50, Ord. Dated Mar. 4, 2019.

[64]    See Doc. 53-1, Ex. A to Pl.'s Mot. to Lift Stay, Apr. 1, 2019 Email (Sealed).

[65]    See Doc. 55, Defs.' Resp. to Pl.'s Mot. to Lift Stay pp. 4-5.

[66]    See Doc. 52, Pl.'s Mot. to Lift Stay.

[67]    See Doc. 56, Ord. Dated July 5, 2019.

the stay, but awarded Plaintiff attorney's fees for Defendants' failures to either comply with the court's order or timely request an extension.[68]   The court also ordered Defendants to finalize review of Plaintiff's claim within thirty days.[69]

On July 16, 2019, Defendants completed their review of Plaintiff's supplemented claim and denied the claim on the grounds that the long-term disability was due to a pre-existing condition.[70] Defendants no longer took the position that Plaintiff was not disabled.[71]   Subsequently, Plaintiff sought to supplement the administrative record a second time with additional evidence on the grounds that Defendants allegedly changed their rationale for denying Plaintiff's claim.[72]

On August 5, 2019, Plaintiff provided Defendants with a second round of new evidence to consider.[73] On August 14, 2019, Plaintiff filed a second motion to lift the stay.[74]  Plaintiff argued that the newly supplemented material should be included in the administrative record for the court's review and the stay should be

---

[68]    See id. p. 3.

[69]    See id.

[70]    See Doc. 67, Def.'s Resp. to Pl.'s 2nd Mot. to Lift Stay p. 1 (Sealed).

[71]    See id.

[72]    See Doc. 62, Pl.'s 2nd Mot. to Lift Stay p. 6 (Sealed).

[73]    See Docs. 63-11 & 63-12, Exs. N & O to Pl.'s 2nd Mot. to Lift Stay, Email Correspondence (Sealed).

[74]    See Doc. 59, Pl.'s 2nd Mot. to Lift Stay.

lifted.  Defendants argued that they should not have to consider the newly supplemented evidence and the stay should be lifted based on the existing administrative record.  On September 4, 2019, the court ordered Defendants to consider the newly supplemented materials and finalize their review of Plaintiff's claim by October 4, 2019.[75]

On October 4, 2019, Defendants denied Plaintiff's claim on the grounds that she had a pre-existing condition that precluded coverage.[76]  On October 24, 2019, Plaintiff filed an unopposed third motion to lift the stay.[77]  The court lifted the stay on October 28, 2019.[78]

On January 15, 2020, the pending motions for summary judgment were filed.[79]  The motions are now ripe for review.

## II.  Legal Standard

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Coastal Agric. Supply, Inc. v. JP Morgan Chase Bank, N.A., 759 F.3d

---

[75]    See Doc. 68, Ord. Dated Sept. 4, 2019.

[76]    See AR 2591-2597.

[77]    See Doc. 72, Pl.'s 3rd Mot. to Lift Stay.

[78]    See Ord. Dated Oct. 28, 2019.

[79]    See Doc. 96, Defs.' Mot. for Summ. J.; Doc. 98, Pl.'s Mot. for J.

498, 504 (5th Cir. 2014).   A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>Ameristar Jet Charter, Inc. v. Signal Composites, Inc.</u>, 271 F.3d 624, 626 (5th Cir. 2001).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."  <u>Coastal Agricultural Supply, Inc.</u>, 759 F.3d at 504 (quoting <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986)).

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues.  <u>See</u> <u>id.</u> at 505 (quoting <u>Celotex Corp.</u>, 477 U.S. at 323).  If the movant carries its burden, the nonmovant may not rest on the allegations or denials in the pleading but must respond with evidence showing a genuine factual dispute.  <u>See</u> <u>id.</u>  The court must accept all of the nonmovant's evidence as true and draw all justifiable inferences in her favor.  <u>Coastal Agric. Supply, Inc.</u>, 759 F.3d at 505 (quoting <u>Anderson</u>, 477 U.S. at 255)

These rules apply to summary judgment motions in ERISA cases. <u>Green v. Life Ins. Co. of N. Am.</u>, 754 F.3d 324, 329 (5th Cir. 2014)(quoting <u>Cooper v. Hewlett-Packard Co.</u>, 592 F.3d 645, 651 (5th Cir. 2009)).   "When parties file cross-motions for summary

judgment, we review each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party."  <u>Id.</u>

### III. Analysis

Plaintiff's causes of action consist of ERISA claims under ERISA Sections 502(a)(1)(B) and 502(a)(3), waiver, equitable estoppel, and quasi-estoppel.[80]  Plaintiff also argues that she is entitled to benefits because she was not given a "full and fair review."  The parties move for summary judgment on all of Plaintiff's claims.  Prior to addressing the merits of Plaintiff's claims, the court will briefly address Plaintiff's recurring argument that the administrative record should be limited.

### A.  <u>Administrative Record and Reasons for Denial</u>

Despite the court's prior rulings to the contrary, Plaintiff continues to attempt to narrow the scope of the administrative record.  Plaintiff argues that the administrative record closed on one of the following dates: (1) May 6, 2018, because Defendant's completion of the initial appeal was due on that date; (2) June 30, 2018, because that was the last day on which Defendants could have extended their May 6, 2018 deadline; or (3) May 16, 2019, because that was the date Defendants' review was due in conformity with the court's January 31, 2019 recommendation.  Plaintiff also argues

---

[80]    <u>See</u> Doc. 1, Pl.'s Compl. pp. 15-18.  Plaintiff incorrectly titled her ERISA claims as claims under ERISA Sections 502(a)(1)(A) and 502(a)(2).  However, it is clear from the text in her complaint that Plaintiff pled causes of action under ERISA Sections 502(a)(1)(B) and 502(a)(3).

that Defendants should not be able to manufacture new reasons for their denial of Plaintiff's claim after the administrative record closed.   In support, Plaintiff cites Fifth Circuit precedent holding that a plan administrator may not offer new justifications for a denial after the administrative process has ended.  See e.g., George v. Reliance Standard Life Ins. Co., 776 F.3d 349, 353 (5th Cir. 2015).   Unlike George, the present case is unique in that the administrative process was not complete when this lawsuit was filed.   The court agrees, that under the cited precedent, Defendant cannot create new reasons for the denial of Plaintiff's claim after the administrative process concluded.

At a November 5, 2018 hearing, the court specifically ordered Plaintiff to file a motion for a ruling on when the administrative process would be deemed complete with the intent that this issue be resolved before its ERISA review by summary judgment.   Plaintiff filed that motion and the court addressed it in its January 31, 2019 recommendation.   The court found that the administrative record closed on August 14, 2018, but, because Plaintiff attempted to interject new material before the court, Plaintiff could remand this dispute to the plan administrator for further consideration of additional records.   Plaintiff made the choice to remand this dispute thereby reopening the administrative record.   After further disputes between the parties at the administrative level, Defendants issued their final determination on October 4, 2019.

16

For the reasons already discussed in the court's January 31, 2019 recommendation, the administrative record did not close on May 6, 2018.  As discussed in that recommendation, Defendants' deadline to issue a determination on coverage was tolled by Plaintiff's premature filing of this lawsuit.  Thus, the administrative record also did not close on June 30, 2018, and Defendants' August 14, 2018 coverage determination was timely.

Regarding Plaintiff's argument that the administrative record closed on May 16, 2019, the court sanctioned Defendants for their failure to meet that deadline as ordered by the court but allowed Defendants additional time within which to review the records. Plaintiff had an obligation to exhaust her administrative remedies unless it was futile to do so.  See Bourgeois v. Pension Plan for Employees of Santa Fe Intern. Corps., 215 F.3d 475, 479–80 (5th Cir. 2000).   To show futility a claimant must generally show a "certainty of an adverse decision" or that her claim would not have been considered.   See id. (internal quotation marks omitted). Despite failing to meet the May 16, 2019 deadline, Defendants indicated on July 2, 2019, that review of Plaintiff's claim could be finalized within thirty days.[81]  Plaintiff cannot show futility on May 16, 2019, because Defendants were still actively considering her additional materials.  While Defendants violated the court's deadline, closing the record prematurely would be an overreaction

---

[81]     See id. pp. 6-7.

because Dearborn National and not the court should review all the submitted information initially.  The court's award of attorney's fees was a sufficient response to Defendants' untimeliness.

Defendants issued their final determination at the administrative level on October 4, 2019.  Accordingly, the court considers October 4, 2019, to be the date that the administrative record closed.  Any reasons for the denial of Plaintiff's claim that post-date October 4, 2019, will not be considered by the court.

## B.    ERISA Section 502(a)(3)

Defendants move for summary judgment on Plaintiff's Section 502(a)(3) claim on the ground that the relief sought is duplicative of her Section 502(a)(1)(B) claim.  Section 502(a)(3) allows an ERISA plan participant, beneficiary, or fiduciary to bring a civil lawsuit: "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan . . . ."  Pursuant to Section 502(a)(3), Plaintiff requests that the court: (1) limit the scope of the administrative record to only include information provided prior to Plaintiff's filing of this lawsuit; (2) limit the Defendants' rationales for denial to the date that administrative remedies were exhausted; (3) draw an inference in Plaintiff's favor regarding the

October 2016 benefits orientation; (4) issue a permanent injunction requiring Defendants to provide audio recordings of phone calls with a claimant as part of the administrative record; and (5) award Plaintiff LTD benefits.[82]  Plaintiff argues that she is entitled to these remedies because Defendants have repeatedly violated ERISA claims procedures.  Defendants argue that Plaintiff has an adequate remedy under Section 502(a)(1)(B) and therefore alternative equitable relief under Section 502(a)(3) is not available.

To recover "appropriate equitable relief" under Section 502(a)(3), "a plaintiff 'must establish that the defendant is (a) a plan fiduciary, (b) has breached its fiduciary duties under ERISA, (c) that such a breach caused the plaintiff's injury, and (d) that the equitable relief sought is indeed appropriate.'" Keith v. Metro. Life Ins. Co., CV H-15-1030, 2017 WL 1026008, at *3 (S.D. Tex. Mar. 15, 2017)(quoting Shonowo v. Transocean Offshore Deepwater, Inc., Civil Action No. 4:10-CV-1500, 2011 WL 3418405, at *5 (S.D. Tex. Aug. 3, 2011)).  As discussed above, the court has determined that the administrative record closed on October 4, 2019, and Defendants' rationales are limited to those asserted on or before that date.  Seeking equitable relief to overturn a court ruling is not an appropriate remedy.

Plaintiff demands a credibility inference in her favor

---

[82]    See Doc. 105, Pl.'s Resp. to Def.'s Mot. for Summ. J. p. 24 n.56; Doc. 1, Pl.'s Compl. p. 16.

regarding the October 2016 benefits orientation based on Defendants' omissions from a December 2017 administrative records request. Specifically, Defendants did not provide to Plaintiff audio recordings of conversations with Plaintiff that occurred relative to the STD policy, Plaintiff's request for an exception to the preexisting condition exclusion for the STD claim, or the decision to allow benefits on Plaintiff's STD claim.[83] These records have since been included in the administrative record. If the court were to consider what equitable relief would be appropriate under Section 502(a)(3) for these alleged violations, the appropriate remedy would be to order the production of the documents that were not provided, not to deem Plaintiff more credible than another witness. As the relevant documents are now a part of the administrative record, the court need not consider equitable relief under Section 502(a)(3). Also, without more information,[84] the court finds Plaintiff's Section 502(a)(3) request to enjoin Defendants to produce audio recordings of all conversations with all claimants in all future lawsuits to be unsupported by the record and therefore is not available under Section 502(a)(3).

Finally, Plaintiff's request for equitable relief that she is

---

[83]    See Doc. 103, Pl.'s Mot. for J. pp. 28-29, 62.

[84]    Plaintiff devoted one line in a footnote to her request for this permanent injunction. See Doc. 105, Pl.'s Resp. to Defs.' Mot. for Summ. J. p. 24 n.56.

entitled to LTD benefits is duplicative of Plaintiff's Section 502(a)(1)(B) claim. As such, it is not available under Section 502(a)(3) even if her Section 502(a)(1)(B) claim is unsuccessful. See e.g., Musmeci v. Schwegmann Giant Super Markets, Inc., 332 F.3d 339, 349 (5th Cir. 2003); Metro. Life Ins. Co. v. Palmer, 238 F. Supp. 2d 826, 830 (E.D. Tex. 2002); Tolson v. Avondale Indus., Inc., 141 F.3d 604, 610 (5th Cir. 1998). Finding that the relief requested under Section 502(a)(3) is inappropriate and not supported by the record, the court will focus its inquiry on Plaintiff's Section 502(a)(1)(B) claim and whether Defendants properly denied Plaintiff's LTD benefits claim.

## C.   **ERISA Section 502(a)(1)(B)**

Section 502(a)(1)(B) provides an ERISA plan participant or beneficiary to bring a cause of action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan . . . ." 29 U.S.C. § 1132(a)(1)(B). Where an ERISA plan lawfully delegates discretionary authority to a plan administrator, the court's review under Section 502(a)(1)(B) is limited to determining whether the plan administrator abused that discretion. Ariana M. v. Humana Health Plan of Tex., Inc., 884 F.3d 246, 247 (5th Cir. 2018)(citing Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989)). If an ERISA plan does not have a valid delegation clause, the court's Section 502(a)(1)(B)

21

review is de novo for both legal and factual determinations.  Id.
at 246, 256 (citing Firestone Tire & Rubber Co., 489 U.S. at 115).
Texas law prohibits insurers from using discretionary clauses.  See
Tex. Ins. Code § 1701.062(a); Tex. Admin. Code § 3.1203.
Accordingly, the court's review under Section 502(a)(1)(B) is de
novo.[85]  See e.g., Woods v. Riverbend Country Club, Inc., 320 F.
Supp. 3d 901, 909 (S.D. Tex. 2018).

Defendants denied Plaintiff's LTD benefits on the grounds that
she had a pre-existing condition that precluded coverage.
Plaintiff argues that she is entitled to LTD benefits.  The court
considers de novo whether Plaintiff had a pre-existing condition
that excluded her from coverage under the LTD policy.

The LTD plan states that it "does not cover any loss or
Disability caused by, resulting from, arising out of or
substantially contributed, directly or indirectly, to by . . . a
Pre-existing condition . . . ."[86]  The LTD plan defines a pre-
existing condition as a condition that:

> (1) was caused by, or results from a Sickness or Injury
> for which [Plaintiff] *received medical treatment, or
> advice was rendered, prescribed or recommended* whether or
> not the Sickness was diagnosed at all or was misdiagnosed
> *within 3 months prior to [Plaintiff's] effective date;*
> and (2) results in a Disability which begins in the first
> 12 months after [Plaintiff's] effective date.[87] (emphasis

---

[85]     Defendants did not challenge Plaintiff's assertion that a de novo
review applies.

[86]     AR 268.

[87]     AR 284.

added).

Although she originally identified her disabling condition as "brain cancer," Plaintiff asserted on appeal that her disabling condition was "radiation-induced cognitive decline."[88] Nonetheless, Defendants considered Plaintiff's appeal as though her disabling condition was a cognitive impairment.[89] The court will do the same.

Plaintiff's employment with Situs began on October 11, 2016.[90] Plaintiff's coverage under the STD and LTD policies was effective on November 1, 2016.[91] Plaintiff's disability commenced on March 6, 2017.[92] Thus, her disability began within the first twelve months of her employment. However, the parties dispute whether Plaintiff received treatment or advice regarding her disability within the relevant three-month pre-employment period from August 1, 2016, to October 31, 2016. Defendants argue that Plaintiff received "treatment" or "advice" when she received a neuropsychological evaluation from Dr. Noll on October 5, 2016.[93]

Dr. Noll conducted two neuropsychological evaluations of Plaintiff.[94] At the first evaluation conducted on December 10,

---

[88]   AR 210, 639.

[89]   See Doc. 96, Defs.' Mot. for Summ. J. p. 9.

[90]   See AR 847.

[91]   See AR 214, 258.

[92]   See AR 210.

[93]   See AR 2187-97, 2537.

[94]   See id.

2015, Dr. Noll found that Plaintiff had "isolated impairments in verbal learning and memory and poor initial encoding of visual information."[95]  At the October 5, 2016 evaluation, Dr. Noll found that Plaintiff had impairments in learning and memory and reduced upper extremity dexterity.[96]  Dr. Noll noted that Plaintiff's attention, working memory, and left had dexterity had declined since the December 10, 2015 evaluation.[97]

Two independent neuropsychologists reviewed Plaintiff's medical record and found that, during the period from August 1, 2016, to October 31, 2016, Plaintiff received treatment and/or advice for the cognitive impairment that eventually resulted in her disability.[98]

Plaintiff originally stated that her impairment was "brain cancer" and now states that her impairment is "radiation-induced cognitive decline."[99]  Her October 6, 2016 evaluation with Dr. Noll was for the purpose of monitoring the effects of the removal of her tumor and the subsequent radiation treatment.  At that October 6, 2016 evaluation, Dr. Noll noted that Plaintiff had declined in multiple cognitive areas since the December 10, 2015 evaluation.

---

[95]    Id.

[96]    Id.

[97]    Id.

[98]    AR 2339, 2589.

[99]    AR 210, 639.

While Plaintiff was not fully disabled at that evaluation, the preponderance of the evidence shows that Plaintiff's disability arose out of or was substantially evidenced by the cognitive impairments she was experiencing during the October 2016 evaluation.  In other words, the cognitive decline that eventually disabled Plaintiff had already been evaluated and diagnosed when Plaintiff underwent the October 2016 evaluation.

Plaintiff's stance on this issue is not supported by the medical records.  Plaintiff argues that the injury to her prefrontal cortex that caused her disability had not yet occurred because two components of cognition - higher level visuoconstruction and visuomotor integration - were not rated as deficient when Dr. Noll evaluated her.  While these specific cognitive impairments may have been what cumulatively resulted in the disability determination, they still were a part of the cognitive decline that Plaintiff was experiencing at the October 2016 evaluation.  To find otherwise, the court would have to determine, without any medical evidence, that Plaintiff experienced two separate and unrelated cognitive declines as a result of the removal of her tumor and her radiation treatment.  The court would also have to find that only the cognitive decline related to Plaintiff's disability began after her October 2016 evaluation. The court cannot make these findings.

Finally, Dr. Noll made recommendations regarding Plaintiff's

cognitive decline at the October 2016 evaluation.[100]   Thus, during
the relevant period from August 1, 2016, to October 31, 2016,
Plaintiff received advice regarding a cognitive decline that
eventually resulted in her disability.

    For these reasons, Defendants did not err in denying
Plaintiff's LTD benefits claim pursuant to the pre-existing
condition exclusion.

## D.  **Full and Fair Review**

    The failure to provide a full and fair review provides an
"independent basis to overturn a plan administrator's denial of
benefits." Napoli v. Johnson & Johnson, Inc., 624 Fed. App'x 861,
865 (5th Cir. 2015)(internal quotation marks omitted)(quoting Truitt
v. Unum Life Ins. Co. of Am., 729 F.3d 497, 510 n.6 (5th Cir.
2013)).  Plaintiff argues that Defendants' numerous violations of
ERISA procedure provide an independent basis to overturn the denial
of her benefits.

    In the Fifth Circuit, Plaintiff's challenge to Defendants'
procedural adherence is evaluated under the following standard:

> Challenges to ERISA procedures are evaluated under the
> substantial compliance standard.  This means that the
> technical noncompliance with ERISA procedures will be
> excused so long as the purpose of section 1133 has been
> fulfilled.  The purpose of section 1133 is to afford the
> beneficiary an explanation of the denial of benefits that
> is adequate to ensure meaningful review of that denial.
> The substantial compliance test also considers all
> communications between an administrator and plan

---

[100]    See AR 2196-97.

> participant to determine whether the information provided
> was   sufficient   under   the   circumstances.     All
> communications may include oral communications.

<u>Wade v. Hewlett-Packard Dev. Co. LP Short Term Disability Plan</u>, 493
F.3d 533, 539 (5th Cir. 2007)(internal citations and quotation marks
omitted); <u>see also Lafleur v. Louisiana Health Serv. & Indem. Co.</u>,
563 F.3d 148, 154 (5th Cir. 2009).

Plaintiff alleges that seven procedural violations denied her
a full and fair review of her claim.  The court will address them
in turn.

Plaintiff argues that she was not notified of the initial
denial within forty-five days of Defendants' receipt of her claim
as required.   29 C.F.R. § 2560.503-1(f)(3).   Defendants concede
this error.   Dearborn National sent the initial denial to 9311
Braesdale Lane instead of the correct address 8311 Braesdale
Lane.[101]  Plaintiff's initial denial occurred on September 25, 2017,
and the denial letter was not mailed to the correct address until
November 10, 2017.   Plaintiff contends that this delay denied her
the full 180 days to prepare an appeal because Defendants did not
change the date on the letter when it was resent to the correct
address.   However, the letter clearly stated that Plaintiff had
within 180 days of her *receipt* of the letter to appeal.[102]   Thus,
Plaintiff's contention that she was deprived of the full appeal

---

[101]     AR 514, 521.

[102]     AR 524.

time is without merit.  Nothing about Defendants' delay due to a misdirected letter deprived Plaintiff of a full and fair review.

Plaintiff next argues that Defendants' appeal review decision maker was the same individual who denied the claim initially. Ruthie Briggs ("Briggs") handled Plaintiff's initial claim.[103] 29 C.F.R. § 2560.503-1(h)(3)(ii).  Mary Knutsen handled Plaintiff's appeal.[104]  Plaintiff argues that Briggs must have reviewed her own denial decision because she sent a letter to Plaintiff acknowledging Plaintiff's appeal and requested additional medical records.  But this letter acknowledging the appeal does not negate the administrative record that shows that Mary Knutsen was the decision maker on the appeal.  Briggs' minor involvement in the claims process after the initial denial did not deny Plaintiff a fair review of the initial denial.

Plaintiff contends that Defendants failed to make a determination within forty-five days of receipt of Plaintiff's appeal.  The court addressed this complaint in its January 31, 2019 recommendation, where it found that Defendants' decision on appeal was not untimely.  This delay did not deprive Plaintiff of a full and fair review.

Plaintiff next argues that Defendants failed to: (1) timely consult with independent health care professionals; (2) timely

---

[103]     AR 520-26.

[104]     AR 1298.

identify the healthcare professionals to whom Plaintiff's claim was referred; and (3) failed to preserve the independence of the healthcare professionals.   Plaintiff's first two allegations regarding timeliness are based on the contention that she exhausted her administrative remedies on May 6, 2018.   The court has repeatedly rejected that contention.

Regarding Plaintiff's other contention, Defendants asked Judy L. Schmidt, M.D. ("Dr. Schmidt") to amend her report because her review had not been written from an oncology perspective and a second doctor was reviewing records related to Plaintiff's cognitive and psychological conditions.[105]   This did not deprive Plaintiff of her right to a full and fair review.   Keeping reviewing doctors focused on certain areas of medical expertise during the appeal process appears reasonable under the circumstances and allowed the medical records to be reviewed by two specialists, not by one generalist.

Plaintiff also argues that Defendants pressured Cris Johnston, Ph.D. ("Dr. Johnston"), to change his June 6, 2019 report.[106]   It is true that on June 19, 2019, Dr. Johnston issued a revised addendum to his June 6 report which added detail that was missing from the earlier report.[107]   In the addendum, Dr. Johnston averred that his

---

[105]     AR 345-46.

[106]     AR 2330-40.

[107]     AR 2355.

opinions "are independent of any claim decisions or the referring agency."[108]   Without proof, Plaintiff argues that because Dr. Johnston supplemented his report, Defendants must have exerted pressure on Dr. Johnston.

The court has reviewed the reports and concludes that Dr. Johnston did not change his opinion as claimed by Plaintiff but simply more thoroughly explained it.[109]   As Plaintiff's sole basis for her argument that Dr. Johnston was pressured is a more thorough analysis of his medical records, the court cannot grant Plaintiff summary judgment on this issue.

Plaintiff's next two contentions center around Defendants' extension of their appeal deadline and the tolling of that deadline.   These issues were addressed in the court's January 31, 2019 recommendation and did not deprive Plaintiff of a full and fair review of her claim.

Finally, Plaintiff alleges that Defendants repeatedly failed to timely provide records in response to her administrative records requests.   Plaintiff identifies the following administrative records requests as relevant: (1) a November 22, 2017 request; (2) a May 23, 2018 request; (3) a May 23, 2019 request; and (4) a July 23, 2019 request.[110]   Plaintiff also argues that her request for an

---

[108]   AR. 2355.

[109]   See Doc. 107, Pl.'s Reply in Support of Mot. for J. pp. 9-10 n.24-26.

[110]   See Doc. 103, Pl.'s Mot. for J. p. 53.

exception to the pre-existing condition clause in the STD policy, the decision granting her STD benefits, and audio recordings of phone calls should have been provided in response to her November 22, 2017 request.[111]  Plaintiff admits that Defendants responded to her November 22, 2017 request on December 8, 2017, and supplemented that response on December 12, 2017.  It is unclear how Defendants' response was inadequate and deprived her of a full and fair review.

Plaintiff also does not point out what was inadequate about Defendants' response to her May 23, 2018 request.  Defendants responded to the May 23, 2019 request on June 6, 2019, and responded to the July 23, 2019 request on July 24, 2019.[112] Plaintiff's assertion that these responses were untimely is not supported by the record.  Regarding the specific documents Plaintiff complains about, it is not clear at what stage these were produced to Plaintiff.  Regardless, they have since been produced and were considered in the claims process.[113]  Thus, Plaintiff was not denied a full and fair review.

### E.   **Waiver**

"Waiver is the voluntary or intentional relinquishment of a known right."  Pitts By & Through Pitts v. Am. Sec. Life Ins. Co., 931 F.2d 351, 357 (5th Cir. 1991) (citing General Elec. Supply Co.

---

[111]   See Doc. 107, Pl.'s Reply in Support of Mot. for J. p. 10.

[112]   AR 2341, 2492.

[113]   See e.g., 2591-2597.

v. Utley–James of Texas, Inc., 857 F.2d 1010, 1013 n. 1 (5th Cir. 1988)).  Plaintiff argues that Defendants waived their right to deny Plaintiff's LTD benefits based on a pre-existing condition by paying Plaintiff STD benefits in spite of that policy's pre-existing condition exclusion.[114]

On April 6, 2017, Defendants denied Plaintiff's STD benefits under the pre-existing conditions exclusion.[115]  However, following an internal discussion about the representations made at the October 2016 benefits meeting, Defendants agreed to waive the pre-existing conditions exclusion for Plaintiff's STD claim.[116]  On April 12, 2017, Defendants informed Plaintiff that her STD claim was approved through August 28, 2017, the date Plaintiff was expected to return to work.[117]  On August 1, 2017, Defendants were informed that Plaintiff might not return to work on August 28, 2017, as originally anticipated.[118]  On August 23, 2017, Plaintiff confirmed that she did not know how much longer she would need to be out of work.[119]  As a result, Plaintiff's STD benefits were extended to the maximum duration of the STD policy and her claim

---

[114]    See Doc. 103, Pl.'s Mot. for J. pp. 53–54.

[115]    See AR 122–125.

[116]    See AR 749–754.

[117]    See AR 739–741.

[118]    See AR 2411–12.

[119]    See Doc. 100-9, Ex. 9 to Pl.'s Mot. for J., Aug. 23, 2017 Phone Conversation.

for continued time off was transferred to Defendants' LTD department.[120]

There are two related problems with Plaintiff's contention that this sequence of events amounted to a waiver of Defendants' ability to enforce the LTD Plan's pre-existing condition exclusion. First, Plaintiff's STD and LTD benefits are governed by different plans with different pre-existing condition exclusions.[121]  It is undisputed that Defendants intentionally and unequivocally waived the pre-existing condition exclusion in the STD Plan for Plaintiff's STD claim.  However, that waiver does not compel a conclusion as a matter of law that they also intended to waive the pre-existing condition exclusion for any other benefit plan. Second, when Defendants waived the pre-existing condition exclusion with respect to Plaintiff's STD claim, they were unaware that Plaintiff would also be making a LTD benefits claim.

Thus, as a matter of law, Defendants did not waive their right to assert the pre-existing condition exclusion with respect to the LTD policy.

## F.  <u>Estoppel</u>

"To establish an ERISA-estoppel claim, the plaintiff must establish: (1) a material misrepresentation; (2) reasonable and detrimental reliance upon the representation; and (3) extraordinary

---

[120]    <u>See</u> AR 728-30.

[121]    <u>See</u> AR 27, 284.

33

circumstances." <u>Mello v. Sara Lee Corp.</u>, 431 F.3d 440, 444–45 (5th Cir. 2005)(citing <u>McCall v. Burlington Northern/Santa Fe Co.</u>, 237 F.3d 506, 513 (5th Cir. 2000)).  Normally, an ERISA-estoppel claim is not permitted where it is based on an oral modification of plan terms.  <u>See</u> <u>id.</u> at 446 (citing <u>Weir v. Fed. Asset Disposition Ass'n</u>, 123 F.3d 281, 289 (5th Cir. 1997)).

Defendants argue that Plaintiff's claimed reliance on various representations that the policies did not contain pre-existing conditions exclusions was unreasonable in light of the clear language of the Plans.  Defendants also argue that Plaintiff cannot show extraordinary circumstances.  Plaintiff counters that she has carried her burden on all of the elements of her estoppel claim.

### 1.  Material Misrepresentation

At the October 2016 benefits orientation, Plaintiff alleges she was told by Perkins, the Situs Benefits Coordinator, that all employees present, including Plaintiff, were eligible for benefits regardless of whether they had pre-existing conditions and no questions would be asked regarding medical history.[122]  According to Plaintiff, a Dearborn National representative was present at this benefits orientation and did not correct Perkins.[123]  Later, Plaintiff inquired with Perkins and Turner after noticing questions inconsistent with the representation at the benefits orientation.

---

[122]    AR 848.

[123]    <u>Id.</u>

34

Perkins and Turner told Plaintiff that she had to enroll as a new hire to avoid the pre-existing condition exclusions.  Clearly, these representations constituted material misrepresentations.

### 2.    Reasonable and Detrimental Reliance

Despite wishing to wait until open enrollment, Plaintiff made the choice to enroll in the disability benefit plans as a new hire in reliance on the representations made at the benefits orientation and after making inquiries with Perkins and Turner.  Plaintiff states that she made this decision because she wanted benefits without pre-existing condition exclusions.[124]  Given Plaintiff's already-present cognitive decline and potential latent effects of cancer surgery and radiation therapy, it is understandable why this issue was so crucial to Plaintiff.

In addition to paying insurance premiums in reliance on the discussed misrepresentations, Plaintiff was deprived of the ability to make an educated choice.  If Plaintiff had been correctly informed of the pre-existing condition exclusions in the disability policies, given the significance of that issue to Plaintiff, it is possible that she could have elected to purchase some other type of insurance in the marketplace that did not have a pre-existing condition exclusion.  Instead, relying on the misrepresentations by Defendants' employees, Plaintiff signed up for policies having pre-existing condition exclusions.  Plaintiff

---

[124]    Id.

has raised a plausible claim of reliance on Defendants' misrepresentations to her detriment. Whether that reliance was reasonable becomes the critical issue.

In cases where an ERISA-estoppel claim is denied because it requires an oral modification of plan terms, the Fifth Circuit has consistently found that it was unreasonable for a plan participant to rely on an oral representation that was contrary to clear plan terms that were available to the plan participant. Weir, 123 F.3d at 290 ("Where, as here, a plan participant is in possession of a written document notifying her of the conditional nature of benefits, her reliance on employer representations regarding benefits may never be reasonable.")(internal quotations omitted); Mello, 431 F.3d at 445-46 (5th Cir. 2005)(finding that it was unreasonable for a plan participant to rely on benefits statements and employer's assertion rather than a clear definition contained in the plan);[125] see also High v. E-Sys. Inc., 459 F.3d 573, 580 (5th Cir. 2006).

A plan administrator is required to furnish a copy of the summary plan description to each plan participant within ninety days of the date that they become a plan participant. 29 U.S.C. § 1024(b)(1). Plaintiff asserted that she had not seen and was not

---

[125]    In the Mello opinion, the Fifth Circuit also quoted with favor a Sixth Circuit opinion that found a party's reliance generally cannot be "reasonable or justifiable if it is inconsistent with the clear and unambiguous terms of plan documents available to or furnished to the party." Mello, 431 F.3d at 445-46 (internal quotation marks omitted)(quoting Sprague v. GMC, 133 F.3d 388, 404 (6th Cir.1998)).

given a copy of either the STD or LTD summary plan description until almost one year after she became a plan participant.[126]   If believed by the trier of fact, this testimony would support a conclusion that Plaintiff did not receive summary plan descriptions until after she was disabled and had filed disability claims. Defendants do not appear to contest this assertion.

By not providing Plaintiff with the appropriate summary plan descriptions within ninety days, Defendants clearly violated an ERISA provision.   Under the cited authority, Plaintiff's reliance would be unreasonable had she been timely provided with the relevant summary plan descriptions.   However, none of the cited cases hold that a plan participant's reliance was unreasonable where the plan administrator failed to furnish the summary plan descriptions in accordance with ERISA.   Because it appears that Defendants have violated a procedural aspect of ERISA, it would be an inequitable result for Defendants to benefit from that violation.   Accordingly, Plaintiff's reliance on the oral representations, if believed by the trier of fact, was not unreasonable.

### 3.   Extraordinary Circumstances

Generally, to show extraordinary circumstances, one or more of the following must be shown: "(1) acts of bad faith; (2) attempts to actively conceal a significant change in the plan; (3) the

---

[126]     AR 849-50.

commission of fraud; (4) circumstances where a plaintiff repeatedly and diligently inquired about benefits and was repeatedly misled; or (5) an especially vulnerable plaintiff." Brown v. Aetna Life Ins. Co., 975 F. Supp. 2d 610, 625–26 (W.D. Tex. 2013). Without delving into Plaintiff's innumerable allegations of bad faith, Plaintiff has created a factual issue on at least two of these possible extraordinary circumstances.

First, Plaintiff has presented evidence that she was particularly vulnerable. Plaintiff was already experiencing cognitive decline at the time the relevant misrepresentations were made. Additionally, Plaintiff, a single woman, is solely responsible for her own care and support. Thus, obtaining benefits that did not have pre-existing condition exclusions was a necessity for Plaintiff. Upon being told that her benefits did not have pre-existing condition exclusions Plaintiff signed up in reasonable reliance on Defendants' misrepresentations.

In addition to being vulnerable, Plaintiff has presented evidence that she was diligent in inquiring about her benefits. Upon seeing contradictory wording in her open enrollment documents, Plaintiff asked Perkins and Turner why questions related to prior health were present. Plaintiff was told that she would have to sign up as a new hire to avoid the pre-existing condition exclusions. Plaintiff then signed up as a new hire and was not asked any questions about her prior health. The court sees no

reason that Plaintiff should have continued to question Perkins and Turner about pre-existing condition exclusions when she was able to enroll as a new hire and was not asked questions about her prior medical conditions.

For these reasons Defendants' motion for summary judgment should be denied as to Plaintiff's ERISA-estoppel claim. Plaintiff's motion for judgment on this claim should also be denied because a trial will be necessary to assess the credibility of all witnesses regarding the factual issues underpinning Plaintiff's ERISA-estoppel claim.   The trier of fact will also have to determine whether Dearborn National adopted Situs's misrepresentations through its silence at the benefits orientation.

## G.   **Quasi-Estoppel**

Plaintiff argues that quasi-estoppel should be applied to this lawsuit.  Plaintiff admits that the Fifth Circuit has not addressed quasi-estoppel in the ERISA context.[127]  Plaintiff also admits that other circuits applying quasi-estoppel in the ERISA context have estopped the plan participant, not the plan administrator. Specifically, those circuits have held that a plan participant cannot accept benefits under a plan and then later take a position inconsistent with the acceptance of those benefits.  See e.g., Admin. Comm. of Wal-Mart Stores, Inc. Associates' Health & Welfare Plan v. Gamboa, 479 F.3d 538, 545 (8th Cir. 2007).  Quasi-estoppel

---

[127]    See Doc. 105, Pl.'s Resp. to Def.'s Mot. for Summ. J. p. 23.

has not been adopted in this circuit in the ERISA context and Plaintiff seeks to have quasi-estoppel applied in a way that is contrary to its application in other circuits.   Accordingly, summary judgment should be granted on Plaintiff's quasi-estoppel "affirmative defense."

### IV.   Conclusion

Based on the foregoing, the court **RECOMMENDS** that Plaintiff's Motion for Judgment be **DENIED,** that Defendants' Motion for Summary Judgment be **DENIED** with respect to Plaintiff's ERISA-estoppel claim and **GRANTED** as to all other claims.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13.   Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically.   Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 26th day of May, 2020.

Nancy K. Johnson
United States Magistrate Judge

40