IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LISA K. BUNNER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-18-1820 |
| | § | |
| DEARBORN NATIONAL LIFE | § | |
| INSURANCE COMPANY, SITUS | § | |
| GROUP, LLC, and EMPLOYEE | § | |
| WELFARE PLAN, | § | |
| | § | |
| Defendants. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

This action arises from denial of Plaintiff Lisa K. Bunner's application for long-term disability benefits from an employee welfare benefit plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, <u>et seq.</u> Defendant Situs Group, LLC ("Situs"), was Plaintiff's employer, and Sponsor and Administrator of Defendant Employee Welfare Plan ("Situs Plan"). The Situs Plan includes both Voluntary Group Short Term Disability ("STD") insurance and Group Long Term Disability ("LTD") insurance provided by Defendant Dearborn Life Insurance Company f/k/a Dearborn National Life Insurance Company ("Dearborn"). Pending before the court is Ms. Bunner's Motion for Judgment on ERISA Estoppel ("Plaintiff's Motion for Judgment") (Docket Entry No. 136). Defendants urge the court to deny Plaintiff's Motion for Judgment, and to award them attorney's fees

and costs.[1] Based on the Findings of Fact and Conclusions of Law stated below, Plaintiff's Motion for Judgment will be denied, and Defendants' request for attorney's fees and costs will be denied.

## I. <u>Introduction</u>

Plaintiff filed this action on June 2, 2018, asserting claims for (1) wrongful denial of benefits under ERISA § 502(a)(1)(A), 29 U.S.C. § 1132(a)(1)(A), (2) violation of applicable claims procedures under ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), (3) waiver, (4) equitable estoppel, and (5) quasi-estoppel.[2]

On May 26, 2020, after the parties filed cross-motions for summary judgment, responses, and replies, Magistrate Judge Nancy K. Johnson issued a Memorandum and Recommendation recommending that Plaintiff's motion for summary judgment be denied in its entirety, and that Defendants' motion for summary judgment be granted as to all claims other than ERISA estoppel.[3]

---

[1]Defendants' Response to Motion for Judgment, Docket Entry No. 141, p. 39 ¶ 73.

[2]Original Complaint ("Complaint"), Docket Entry No. 1, pp. 15-17. Although the Complaint purports to assert claims under ERISA §§ 502(a)(1)(A) and 502(a)(2), it is clear from the text that the claims asserted are actually causes of action under ERISA §§ 502(a)(1)(B) and 502(a)(3). <u>See</u> Memorandum and Recommendation, Docket Entry No. 108, p. 15 n. 80 (recognizing incorrect citations to ERISA §§ 502(a)(1)(A) and 502(a)(2) in Plaintiff's Original Complaint). <u>See also</u> Plaintiff's Motion for Judgment, Docket Entry No. 136, pp. 12-13 & n. 15 (arguing that ERISA estoppel may be maintained under either §§ 502(a)(1)(B) and 502(a)(3)). Page numbers for docket entries refer to the pagination inserted at the top of the page by the court's electronic filing system.

[3]Memorandum and Recommendation, Docket Entry No. 108.

On June 26, 2020, after considering the parties' objections and responses thereto, the court adopted Magistrate Judge Johnson's Memorandum and Recommendation.[4]

At a pre-trial hearing held on October 9, 2020, the court sustained Plaintiff's objections to Defendants' Rule 26 Disclosures as to Defendants' intent to offer testimony beyond the administrative record, ordered Defendants to submit proposed findings of fact highlighted in yellow to show agreed findings, and ordered Plaintiff to file a motion for judgment addressing only the issue of ERISA estoppel.[5] On November 13, 2020, Plaintiff filed the pending Motion for Judgment. Asserting that she "seeks to prevent Defendants from invoking a pre-existing condition exclusion as a defense to [her] claim for LTD benefits under [§] 502(a)(1)(B)," Plaintiff asks the court for

> (i) recovery under [§] 502(a)(1)(B) of the LTD benefits due her under the Situs Plan from September 7, 2017[,] to the date judgment is entered (in the amount of $6,750 per month [or] $225 per day); and (ii) a declaration under [§] 502(a)(1)(B) that she is entitled to recover from Defendants LTD benefits under the Situs Plan (in the amount of $6750.00 per month or $225 per day) through the day she turns 67 or the day she dies, whichever is the earlier.[6]

---

[4]Order Adopting Magistrate Judge's Memorandum and Recommendation, Docket Entry No. 116.

[5]Hearing Minutes and Order, Docket Entry No. 132.

[6]Plaintiff's Motion for Judgment, Docket Entry No. 136, p. 13. See also id. (stating that Plaintiff seeks "either to estop Defendants from contending that a pre-existing condition exclusion
(continued...)

Defendants argue that "Plaintiff cannot prevail on her ERISA-estoppel claim because she has failed to establish a material misrepresentation on which she reasonably relied to her detriment under extraordinary circumstances."[7]

## II. **Findings of Fact**

### A. The Parties

1. On October 11, 2016, Situs hired Plaintiff, who was not married, had no children, and was responsible for her own care.[8]

2. While employed by Situs Plaintiff worked as a Vice President in the Commercial Real Estate Advisory Services division responsible for conducting the due diligence required for commercial mortgage-backed securities transactions.[9]

_____

[6](...continued)
bars [her] eligibility for benefits under the Situs Plan or to estop Defendants from denying that the scope of Defendants' waiver extended to [her] eligibility for LTD benefits or that [she] is and will be entitled to recover LTD benefits under the Situs Plan.").

[7]Defendants' Response to Motion for Judgment, Docket Entry No. 141, p. 7 ¶ 3.

[8]Plaintiff's Proposed Findings of Fact 5, Docket Entry No. 128-7, p. 3. See also Defendants' Proposed Findings of Fact and Conclusions of Law, Docket Entry No. 134, p. 1 ¶ 1 (agreed findings of fact appear in yellow, Defendants' proposed findings of fact appear in black). Subsequent references to the agreed portions of this instrument will be referred to as "Agreed Finding of Fact" or "Agreed Conclusion of Law" followed by the paragraph number.

[9]Plaintiff's Proposed Findings of Fact 5, Docket Entry No. 128-7, p. 3 (citing the Administrative Record ("AR") 847). The majority of the court's citations to the evidence will be to that
(continued...)

3.     At all relevant times, Plaintiff was a participant in the Situs Plan, an employee welfare benefit plan as defined by § 3(1) of ERISA.[10]

4.     Situs is the Sponsor and Administrator of the Situs Plan.[11]

5.     Dearborn provides the Situs Plan with both Group Short Term Disability ("STD") insurance,[12] and Group Long Term Disability ("LTD") insurance,[13] and serves as Claim Administrator for the Situs Plan.[14]

## B.     Plaintiff's Enrollment in the Situs Plan

6.     In October of 2016, after beginning her employment, Plaintiff attended a benefits orientation at which Situs' Benefits Coordinator, Kyndria Perkins ("Perkins"), told attendees that they would be eligible for benefits regardless of pre-existing

---

[9](...continued)
portion of the AR filed by the Defendants in multiple parts as follows: Docket Entry No. 81, pp. 1-900; Docket Entry No. 82, pp. 901-1100; Docket Entry No. 83, pp. 1101-1239; Docket Entry No. 84, pp. 1240-1950; and Docket Entry No. 85, pp. 1951-2597. The page numbers for the AR refer the Bates Label numbering at the bottom of the page without the Bates Label prefix "DNL/Bunner."

[10]See Complaint, Docket Entry No. 1, p. 1 ¶ 4.

[11]Agreed Findings of Facts 7 and 14.  See also AR 3 and 253.

[12]AR 2-28.

[13]AR 252-93.

[14]Agreed Finding of Fact 7.  See also AR 4.

conditions, and that no questions would be asked about their prior health in determining their eligibility for benefits.[15]

7.    An unidentified Dearborn representative who attended the benefits orientation did not correct Perkins' statements that attendees would be eligible for benefits regardless of pre-existing conditions, and that no questions would be asked about their prior health in determining their eligibility for benefits.[16]

8.    Plaintiff had a choice between enrolling for benefits as a new hire or waiting for the next Open Enrollment period, which was scheduled to begin in late November or December of 2016. Because the application that she found for Open Enrollment through Situs' online portal contained questions about prior health that seemed inconsistent with what she was told at the October benefits orientation, Plaintiff asked Perkins about the discrepancy. Plaintiff was told by both Perkins, and Jolene Turner ("Turner"), Situs' Recruiting Coordinator, that if she enrolled as a new hire, she would be exempt from preexisting conditions exclusions and could enroll without having to answer questions about her prior health, but that if she waited until the Open Enrollment period, she would be subject to preexisting conditions exclusions and would have to answer questions about her prior health to enroll.[17]

---

[15]Plaintiff's Proposed Findings of Fact 8, Docket Entry No. 128-7, p. 5 (citing AR 848).

[16]Id.

[17]Plaintiff's Proposed Findings of Fact 9, Docket Entry No. 128-7, pp. 5-6 (citing AR 848).

9.    Although she had intended to wait until the Open
Enrollment period because she already had medical coverage pursuant
to an individual policy obtained in the healthcare marketplace for
which she had paid premiums and met annual deductibles, in reliance
on Perkins' representations at the benefits orientation, and on
Perkins' and Turner's responses to her questions, Plaintiff
enrolled in the Situs Plan as a new hire, and chose STD coverage.[18]

10.    Plaintiff's effective date of coverage by the Situs Plan
was November 1, 2016.[19]


(i)    The Situs Plan's STD Insurance

11.    The Situs Plan's STD insurance is voluntary group
insurance, meaning that employees who chose STD coverage had to pay
premiums for STD insurance.[20]

12.    Premiums for STD insurance were deducted from Plaintiff's
paychecks.[21]

13.    The Situs Plan's STD insurance excluded disabilities
caused by pre-existing conditions by stating that it

---

[18]Plaintiff's Proposed Findings of Fact 10, Docket Entry
No. 128-7, p. 5 (citing AR 848).

[19]Agreed Finding of Fact 11 (citing AR 214).  See also AR 758,
1225-26.

[20]Agreed Finding of Fact 3 (citing AR 8-11).

[21]Agreed Finding of Fact 6 (citing AR 848 and 1225-26).

does not cover any loss or Disability caused by, resulting from; arising out of or substantially contributed to, directly or indirectly, by any one or more of the following:

. . .

2.    a Pre-existing Condition.[22]

14.    The Situs Plan's STD insurance defined "Pre-existing Condition" as

a condition which:

1.    was caused by, or results from a Sickness or Injury for which You received medical treatment, or advice was rendered, prescribed or recommended whether or not the Sickness was diagnosed at all or was misdiagnosed within 12 months prior to Your effective date; and

2.    results in a Disability which begins in the first 12 months after Your effective date.[23]

15.    The Situs Plan's STD insurance defined "Sickness" to "mean[] Sickness or disease causing Disability which begins while You are covered under the Policy."[24]

16.    The Situs Plan's STD insurance did not exempt new hires from the pre-existing condition exclusion.[25]

---

[22]Agreed Finding of Fact 10 (citing AR 17).

[23]Id. (citing AR 27).

[24]Id. (citing AR 27).

[25]Plaintiff's Proposed Findings of Fact 13, Docket Entry No. 128-7, p. 8.

(ii) <u>The Situs Plan's LTD Insurance</u>

17.  Situs employees who chose the Situs Plan's STD insurance were automatically covered by the Situs Plan's LTD insurance, the premiums for which were paid by Situs.[26]

18.  The Situs Plan's LTD insurance was subject to a pre-existing condition exclusion that was identical to the pre-existing condition exclusion applicable to the STD insurance. Specifically, the LTD insurance stated that it

> does not cover any loss or Disability caused by, resulting from, arising out of or substantially contributed to, directly or indirectly, by any one or more of the following:
>
> • a Pre-existing Condition.[27]

19.  The definition of "Pre-existing Condition" applicable to the Situs Plan's LTD insurance differed slightly from the definition applicable to the STD insurance. The LTD insurance defined "Pre-Existing Condition" to mean

> a condition which:
>
> 1.  was caused by, or results from a Sickness or Injury for which You received medical treatment, or advice was rendered, prescribed or recommended whether or not the Sickness was diagnosed at all or was misdiagnosed within 3 months prior to Your effective date; and

---

[26]Agreed Finding of Fact 4 (citing AR 684 and 687).

[27]Agreed Finding of Fact 14 (citing AR 268).

-9-

2. results in a Disability which begins in the first 12 months after Your effective date.[28]

20. The definition of "Sickness" applicable to the Situs Plan's LTD insurance was the same as the Situs Plan's STD insurance, i.e., "Sickness or disease causing Disability which begins while You are covered under the Policy."[29]

21. The Situs Plan's LTD insurance did not exempt new hires from the pre-existing condition exclusion.[30]

## C. Plaintiff's Medical History

22. In August of 2015, Plaintiff was diagnosed with a brain tumor.[31]

23. On September 2, 2015, Plaintiff underwent a craniotomy at M.D. Anderson Cancer Center ("M.D. Anderson") to have the tumor surgically removed. Upon it's removal, the tumor was diagnosed as Oligodendroglioma, a form of malignant brain tumor.[32]

---

[28]Id. (citing AR 284).

[29]AR 284.

[30]Plaintiff's Proposed Findings of Fact 13, Docket Entry No. 128-7, p. 8.

[31]AR 846 and 915.

[32]Plaintiff's Proposed Finding of Fact 6, Docket Entry No. 128-7, p. 4 (citing AR 913-21, 923-74).

24. Prior to Plaintiff's surgery, episodes of numbness, tingling, and pain were the only symptoms caused by the tumor. After surgery, episodes of numbness, tingling, and pain stopped.[33]

25. Through at least March 13, 2018, Magnetic Resonance Imaging ("MRI") that Plaintiff underwent every two months following her surgery, showed no recurrence of the tumor.[34]

26. Plaintiff was fully able to work both before and immediately following her surgery. After being released from M.D. Anderson on September 4, 2015, Plaintiff returned to work on September 18, 2015.[35]

27. Even though the tumor had been fully removed, Plaintiff's physicians advised her to undergo post-operative radiation therapy and chemotherapy because, due to her age and the nature of her tumor, recurrence was a high risk and a new tumor would likely be a higher grade, faster growing, and more aggressive.[36]

28. Plaintiff's radiation oncologist, Dr. Arnold Paulino, recommended that she receive Proton Beam Radiation Therapy ("proton therapy") instead of photon therapy (i.e., intensity-modulated radiation therapy ("IMRT")) to avoid toxic effects, specifically

---

[33]AR 846.

[34]Id. See also Plaintiff's Proposed Finding of Fact 6, Docket Entry No. 128-7, p. 4 (citing AR 846, 978-1014).

[35]AR 846.

[36]Plaintiff's Proposed Finding of Fact 7, Docket Entry No. 128-7, pp. 4-5 (citing AR 846-47, and 1017-18).

cognitive declines, associated with photon therapies. But because her health insurer refused to pay for proton therapy, Plaintiff underwent IMRT therapy from November 17 to December 29, 2015.[37]

29. On December 10, 2015, Kyle R. Noll, Ph.D. ("Dr. Noll"), conducted a neuropsychological evaluation of Plaintiff, and found that she had "isolated impairments in verbal learning and memory and poor initial encoding of visual information."[38]

30. Plaintiff began chemotherapy on December 14, 2015, and continued receiving it until January of 2017. Plaintiff's chemotherapy included a treatment on October 7, 2016.[39]

31. On October 5, 2016, Dr. Noll conducted a second neuropsychological evaluation of Plaintiff, and found that she had impairments in learning and memory, and he noted that her attention, working memory, and left hand dexterity had declined since the December 10, 2015, evaluation. But Dr. Noll noted that "despite the observed deficits on testing, Ms. Bunner reportedly compensated well and maintained adequate daily functional capacities at the time of both evaluations, including within the occupational setting."[40]

---

[37]Id. (citing AR 846-47, 927-67, 975-77, 1015-33).

[38]AR 2537. See also id. at 2187-97.

[39]Plaintiff's Proposed Finding of Fact 7, Docket Entry No. 128-7, pp. 4-5 (citing AR 847, 913-21, 1015-18, 2497-2534).

[40]AR 2537. See also id. at 2187-97.

32. When she began her employment with Situs on October 11, 2016, Plaintiff believed she had managed to avoid radiation-toxicities that can occur following IMRT therapy because she had no difficulty performing her work-related duties either before or immediately after her employment at Situs Group.[41]

33. However, a few of months later, Plaintiff began to experience difficulty completing her work in a timely fashion. Organization, multitasking, forgetfulness, and, in particular, time management, were all problems. Cognitive impairments severely limited Plaintiff's ability to learn, remember, process information, multitask and complete tasks in a timely manner, all of which were indispensable to her job duties at Situs.[42]

D. **Plaintiff's Claim for STD Benefits**

34. On February 23, 2017, Plaintiff took a leave of absence effective March 10, 2017, and applied for STD benefits under the Situs Plan.[43] Plaintiff stated that the disability from which she was suffering was the result of treatment she received for brain cancer and identified her treating physician as Dr. Shiao-Pei Weathers with M.D. Anderson.[44]

---

[41]AR 847.

[42]Id.

[43]Plaintiff's Proposed Finding of Fact 15, Docket Entry No. 128-7, pp. 8-9 (citing AR 847, 890, 912, 915; and Transcripts of Telephone Conversations with Tracy Guerrette of Dearborn on February 23, 2017: Docket Entry Nos. 100-1 (First Conversation) and 100-2 (Second Conversation).

[44]Id. (citing Transcript of Second Telephone Conversation with
(continued...)

35.  On March 8, 2017, Dr. Weathers provided Dearborn with an Attending Physician Statement,[45] stating that Plaintiff suffered from a Class 5 Physical Impairment meaning that she suffered from "[s]evere limitation of functional capacity; incapable of minimum (sedentary*) activity (75-100%)" and noting in addition that she had "difficulty processing information and multi-tasking."[46]

36.  On April 3, 2017, Plaintiff wrote to Ms. Mary Habib ("Habib") who had replaced Perkins as Situs's Benefits Coordinator, to inquire about the delay she was experiencing in having her STD benefits approved.[47]

37.  By letter dated April 6, 2017, and by telephone call to Plaintiff made the same day by Claims Examiner Diana Enman, Dearborn denied Plaintiff's claim for STD benefits citing the STD insurance's pre-existing condition exclusion.[48]

---

[44](...continued) Tracy Guerrette of Dearborn on February 23, 2017, Docket Entry No. 100-2, pp. 6:24-9:9).  See also AR 210 (Telephonic STD Claim Application showing that Plaintiff reported her disabling condition as brain cancer).

[45]Plaintiff's Proposed Finding of Fact 16, Docket Entry No. 128-7, p. 9 (citing  AR 913-21).

[46]Id. (quoting AR 915).  See also AR 773.

[47]Plaintiff's Proposed Finding of Fact 17, Docket Entry No. 128-7, p. 9 (citing AR 848, and 1227).

[48]Agreed Finding of Fact 12 (citing AR 122-24 (Letter to Plaintiff denying her claim for STD benefits)).  See also AR 757 (Letter to Plaintiff denying her claim for STD benefits), and Audio Transcription of: Phone Conversations 4-6-17, Docket Entry
(continued...)

38.  Dearborn's April 6, 2017, letter to Plaintiff referred to and quoted a Situs Group Policy identified by number GAE20260, but the policy was not enclosed in the letter.[49]

39.  The April 6, 2017, letter noticed Plaintiff that

> [w]e will, upon specific request and free of charge, provide copies of all documents, records, and/or other information relevant to your claim for benefits.  We will also, upon specific request and free of charge, provide copies of any internal rule, guideline, protocol or other similar criterion (if any) relied upon in making this determination.[50]

40.  By email dated April 6, 2017, at 3:34 p.m., Karen House, Dearborn's representative in Houston, Texas, sent an Exception Form for Plaintiff's claim to June Taylor and others explaining that

> [i]t is a 24 week STD duration and the maximum benefit date on the claim would be 09/09/17.
>
> Per employee and employer they were told that no pre-x would apply to the VSTD.  ER is insisting that she has never seen a VSTD policy with a pre-x clause included. Emails attached from Christi Harvey and John Petrosky addressing the Pre-x.  Exception was made to provide continuity of coverage for those employees who were part of the initial group set up on 1/1/16 along with an acquisitions.  That is addressed in Christi's email.  She also stated that we would waive the prex for new hires that had prior coverage.  We are asking that the above claim be processed without Pre-X.[51]

---

[48](...continued)
No. 100-15, pp. 2:2-3:11.

[49]Plaintiff's Proposed Finding of Fact 18, Docket Entry No. 128-7, p. 10 (citing  AR 757-58).

[50]AR 760.

[51]AR 118 and 753.

41. By email dated April 6, 2017, at 6:29 p.m., June Taylor sent an Exception Request for Situs Group to Susan Doyle and Minnie Titus-Glover ("Titus-Glover") explaining that

> [f]ormer sales rep sent an email to the broker stating that the pre-ex did not pertain to existing employees or employees that were being acquired and had prior coverage — email is attached[.]
>
> Claim has been denied — Lisa Bunner[.]
>
> Request to remove the pre-ex for the existing employees as stated in Christy's email to the broker[.]
>
> Request to process the claim for Lisa Bunner[.][52]

42. By email dated April 7, 2017, Habib advised Plaintiff that "the exception to have this approved . . . has been submitted" and Dearborn's local representative was doing "everything possible to get it reviewed and approved and paid as fast as possible."[53]

43. By email dated April 11, 2017, Titus-Glover wrote to June Taylor and Marvin Ouellette stating

> June,
>
> Please see attached for the Exception Decision to go ahead and process the Bunner claim, however pre-x for New hires is not waived for the group and this has to be clearly communicated to the group and broker and Mike wants a copy of that communication sent to him. . .

---

[52]AR 752.

[53]Plaintiff's Proposed Finding of Fact 23, Docket Entry No. 128-7, p. 12 (citing AR 848 and quoting AR 1229).

Marvin,

Please pass on to the claims team to process the claim accordingly, however pre-x will apply to any future claims for employees hired after 1/1/2016. . .[54]

44. By email dated April 12, 2017, Minnie Titus-Glover wrote to Jennifer Agger and Kim Durant regarding "Situs Group GAE20260 - Bunner Claim exception" stating that "[i]n Marvin's absence, please see attached decision to proceed with the decision for the Bunner claim for Situs Group. Please confirm when claim is process [sic] and we would greatly appreciate you expediting this processing tomorrow."[55] Although the email states, "Attachments: Approved ED - Bunner Lisa - Situs Group GAE20260.pdf," the referenced attachment is not included in the Administrative Record.

45. By email dated April 12, 2017, Jennifer Agger wrote to STD Claims Examiner Alan Roy ("Roy")

[w]e need your assistance on this one, would you be able to approve based on the attached exception? Diana Enman handled this claim and determined the claimant was not eligible and considered pre-ex - this was appropriate. DN has waived pre-ex for her and other individuals (I will update the Client Profile).[56]

46. Roy replied the same day, "I'm working on it now."[57]

---

[54]AR 750-51.

[55]AR 749-50.

[56]AR 748-49.

[57]AR 748.

47. Later that same day, Roy called Plaintiff by telephone to inform her that her claim for STD benefits had been approved based upon an exception,[58] and explaining that he wanted to let her "know that we were able to reverse [the initial denial]. I guess it was some miscommunication with you and the broker or something."[59]

48. By email dated April 12, 2017, Habib notified Plaintiff that she had "received notification that the claim has been approved."[60]

49. Thus, after agreeing to make an exception to the Pre-existing Condition exclusion upon which Plaintiff's STD claim had been denied, Dearborn approved Plaintiff's claim for STD benefits through August 28, 2017, the date she expected to return to work.[61]

---

[58]Plaintiff's Proposed Finding of Fact 23, Docket Entry No. 128-7, p. 13 (citing Audio Transcription of: Phone Conversations 4-12-17 at 12:05, Docket Entry No. 100-6, p. 2:2-21).

[59]Audio Transcription of: Phone Conversations 4-12-17 at 12:05, Docket Entry No. 100-6, pp. 3:24-4:2.

[60]Plaintiff's Proposed Finding of Fact 23, Docket Entry No. 128-7, p. 13 (citing AR 1230).

[61]Agreed Finding of Fact 13 (citing AR 112-13 ("reversal of pre-ex claim reopened and approved to 8-28 letter in system"); AR 535 ("STD had determined that EE was pre-existing due to the medical records obtained, but decision was reversed based on information from ER. EE is saying that the broker told her ER that i[f] EE's signed up right away they would not be subject to pre-x. EE thinks that is what happened but will confirm with ER.")). See also AR 104-06 (Letter dated April 12, 2017, notifying Plaintiff that claim for STD benefits had been approved, that her last day of work was March 10, 2017, her date of disability was determined to be March 11, 2017, and that her benefits would begin on March 25, 2017, the first day following her 14-day elimination period); AR (continued...)

50. On July 5, 2017, Plaintiff met with a vocational counselor who noted in Plaintiff's file that

> Ms. Bunner is concerned because her STD ends in August and is unsure if she is eligible for LTD. Voc. counselor offered to inquire about her LTD benefits and Ms. Bunner requested to do it herself. She will contact her HR and inquire about her LTD benefits. If Ms. Bunner is not eligible for LTD disability she needs to be working by the end of August for financial reasons.[62]

51. On July 12, 2017, Plaintiff again met with a vocational counselor who noted in Plaintiff's file that Plaintiff "reported that she spoke with her HR and she is eligible for LTD but would be released from her company if she does not return to work when her STD ends."[63]

52. On August 1, 2017, Plaintiff spoke on the telephone with Roy who told her that her STD benefits were approved to August 30, 2017,[64] and in response to Plaintiff's statement that she was trying to get her doctors to tell her whether or not they were going to release her to return to work the following exchange occurred:

---

[61](...continued) 106 (Claim notes stating that Plaintiff's STD claim had been reopened and approved); Audio Transcription of: Phone Conversations 2-23-17 at 2:00, Docket Entry No. 100-2, p. 10:21-24 (Plaintiff's intake interview during which she identified August 28, 2017, as the day she expected to return to work); and Audio Transcription of: Phone Conversations 4-12-17 at 12:05, Docket Entry No. 100-6, p. 3:10-15 (identifying August 28, 2017, as the day Plaintiff estimated she would be able to return to work).

[62]Plaintiff's Proposed Finding of Fact 34, Docket Entry No. 128-7, p. 17 & n. 89 (citing AR 1390).

[63]Id. (citing AR 1391).

[64]AR 2411, Transcript of Audio File Lisa Brunner and Alan Roy, August 1, 2017, p. 2:15-21.

ALAN ROY:        Oh, if they don't, that's not that big a
                 big deal.  I'm trying to see if you have
                 long-term disability or -- hold on one
                 second.

                 You do.  So it would be -- it would go to
                 long-term disability, and then we would
                 just   need   verification _ from   your
                 physician that they're going to extend
                 your claim.

LISA BUNNER:     That they're going to do what?

ALAN ROY:        Extend your disability.

LISA BUNNER:     Got  it.  Okay.   Are  there  forms  that
                 they'll have to fill out or --

ALAN ROY:        No.  Just medical records -- so what we
                 do  is,  I'll  send  it  to  long-term
                 disability, and then they'll -- and then
                 they'll end up just -- if you can get the
                 medical records over, they can nine times
                 out of ten, probably get it -- get it
                 going.  We  just need like --

LISA BUNNER:     Okay.

ALAN ROY:        -- where you're restricted and limited
                 to, so I need medical records to get you
                 to be on the 30th, so when I get that,
                 I'll   send   you   over   to   long-term
                 disability.[65]

53.  By email dated August 7, 2017, Plaintiff responded to an
inquiry from Habib about when or if she would be returning to work,
"[i]t does not appear that my doctors will be releasing me to
return to work before my STD ends on September 9.  I am in the
process of gathering medical records for Dearborn so I can
transition to LTD."[66]

---

[65]Id. at pp. 3:5-4:3.

[66]Plaintiff's Proposed Finding of Fact 36, Docket Entry
                                         (continued...)

-20-

54.  On August 21, 2017, Plaintiff tried to reach Roy by telephone but because he was at lunch, she told the woman who answered the telephone, Denise Soto ("Soto"), that she was transferring from short- to long-term disability and that her doctor wanted to know if there were any forms that needed to be filled out.  After accessing Plaintiff's records, Denise responded that no forms were needed.[67]  Soto told Plaintiff,

> I am looking at a letter that was sent to you back on April 12th.  This is your approval letter.
>
> In that letter where it indicates you're approved to 8-28, and if unable to, for medical reasons, to have your doctor send us the dictated medical records from July 1st to current.
>
> So any chart notes that are still -- that are available from your visits that you have been to since July 1st, they want to be sending that information.[68]

Soto also told Plaintiff "[t]hat's what they are going to review; and then once they get your claim approved through the maximum duration of short-term, they will send it automatically to long-term.  And you will get notification from them."[69]

55.  By email dated August 22, 2017, Plaintiff wrote to Habib:

---

[66](...continued)
No. 128-7, p. 18 (quoting AR 1231).

[67]Audio Transcription of: Phone Conversations 8-21-17, Docket Entry No. 100-7, pp. 2:5-3:9.

[68]Id. at 3:24-5:2.

[69]Id. at 4:24-5:3.  See also Plaintiff's Proposed Finding of Fact 37, Docket Entry No. 128-7, p. 18.

My doctor will not be releasing me in time to return to Situs. I will be transitioning to LTD. Would you please help me get set up on COBRA? Let me know what I need to do in terms of Situs terminating my employment, assuming that is the protocol.[70]

56. On August 23, 2017, Roy telephoned Plaintiff to ask if she had submitted the medical records needed to extend her STD benefits, and when Plaintiff told him that she was still undergoing occupational and speech therapy, Roy told her that

what I am going to do is -- I'll get it over. I'm going to extend your claims so there's no lapse in payment. . . . I had you approved to the 30th anyway's. So I'll approve you to the 9th. That's your maximum benefit. . . And then I'll send your file to long-term disability. They may need some stuff, and I don't really know what they are going to need, but just in case, I don't want there to be like a huge gap in, like, your payments.[71]

57. By letter dated August 23, 2017, Dearborn notified Plaintiff that

[b]ased on the information in your file, your STD benefits have been extended to 09/09/2017 the STD maximum duration.

Your file has been referred to our Long Term Disability Department for review and consideration of Long Term Disability (LTD) benefits. You will be contacted by an LTD representative within 10 days of your claim being assigned.[72]

58. On September 7, 2017, Plaintiff called Roy to verify

_____

[70]Plaintiff's Proposed Finding of Fact 38, Docket Entry No. 128-7, p. 19 (citing AR 1233).

[71]Audio Transcription of: Phone Conversations 8-23-17, Docket Entry No. 100-9, p. 4:7-17. See also Plaintiff's Proposed Finding of Fact 39, Docket Entry No. 128-7, p. 19.

[72]AR 93. See also Agreed Finding of Fact 13 (citing AR 92-94).

to he had received the physician letter that he had recommended she send. After determining that she had sent the letter to the wrong email address, she resent the letter to the correct address.[73] Plaintiff then followed up with an email to Roy asking if payment would "continue as usual or [would] there be a lapse?"[74] Roy replied: "LTD is ever[y] month so it will pay at end of month cycle."[75]

59. Dearborn provided Plaintiff STD benefits for the maximum period of 24 weeks,[76] from March 25, 2017, to September 9, 2017.[77]

60. Situs terminated Plaintiff's employment effective September 10, 2017, because she failed to return to work after her STD benefits expired on September 9, 2017.[78]

---

[73]Plaintiff's Proposed Finding of Fact 41, Docket Entry No. 128-7, p. 20 (citing Audio Transcription of: Phone Conversations 9-7-17, Docket Entry No. 100-10).

[74]Id. (citing AR 2451).

[75]Id.

[76]Agreed Finding of Fact 13 (citing AR 92-94).

[77]Plaintiff's Proposed Findings of Fact 27, Docket Entry No. 128-7, p. 14 (citing AR 726 ("Reversal of pre-ex claim reopened and approved to max . . .")). See also AR 93 (Letter from Dearborn to Plaintiff dated August 23, 2017, stating in pertinent part that "[g]iven your date of disability of 03/11/2017; and after satisfying the 14 day elimination period, STD benefits began 03/25/2017; 24 weeks of benefits will exhaust on 09/09/2017[.] Based on the information in your file, your STD benefits have been extended to 09/09/2017 the STD maximum duration.").

[78]Plaintiff's Proposed Findings of Fact 42, Docket Entry No. 128-7, p. 20 (citing AR 849 and 1234).

## E. Plaintiff's Claim for LTD Benefits

61. On September 11, 2017, LTD Claims Examiner Ruthie Briggs ("Briggs") telephoned Plaintiff to schedule an interview required for processing her claim for LTD benefits,[79] which they scheduled for Thursday, September 14, 2017, at 1:00 p.m.[80] During their conversation Plaintiff asked Briggs if her LTD benefits had been approved, and Briggs responded, "[n]ot yet."[81]

62. On September 14, 2017, Briggs interviewed Plaintiff by telephone regarding her application for LTD benefits.[82] During the interview Briggs told Plaintiff that she might be subject to a pre-existing condition exclusion as that had come up but been waived for her STD benefits claim.[83]

63. By letter dated September 25, 2017, Dearborn denied Plaintiff's claim for LTD benefits based on the pre-existing condition exclusion applicable to the Situs Plan's LTD insurance.[84]

---

[79]Audio Transcription of: Phone Conversations 9-11-17, Docket Entry No. 100-11, p. 2:12-17.

[80]Id. at 3:19-4:8.

[81]Id. at 5:6-8.

[82]Agreed Finding of Fact 15 (citing AR 543-51).

[83]Audio Transcription of: Phone Conversations 9-14-17, Docket Entry No. 100-12, p. 35:21-25.

[84]AR 520-26. See also Complaint, Docket Entry No. 1, p. 4 ¶ 13 (citing Exhibit B-1, Docket Entry No. 2-2).

64. By email dated September 25, 2017, Plaintiff wrote Habib that "Dearborn denied claim for preexisting conditions. I just got a call. Not sure if u have been in touch with them yet."[85]

65. Habib responded, "Yes, I followed up with them last week and it is being worked on. I will advise when I hear back."[86]

66. By email dated October 6, 2017, Plaintiff again wrote to Habib stating

> you told me that you were following up with Dearborn to address the erroneous denial of my LTD claim due to a misrepresentation of coverage terms when I enrolled in the plan. I have not heard from you on this and would like a reply.
>
> Please give me the courtesy of following up with me and actively addressing the LTD coverage matter.[87]

67. Habib replied later the same day that

> I have been talking with Dearborn and will get another update from them. My apologies that it is taking so long but they unfortunately did the same thing previously with the STD coverage. The coverage for LTD was not misrepresented, it was the STD coverage that was and that was resolved and you received the full payment for the time you were out. I will escalate with the team and follow up next week by EOB Wednesday. Thanks![88]

68. By email dated October 10, 2017, Plaintiff again wrote to Habib stating

---

[85]AR 1236.

[86]Id.

[87]AR 1234.

[88]Id.

I know that you have been following up with Dearborn for about 1.5 months.  Can you tell me what they attribute the delay to?  It should be clear from the letter I sent to you and to them that approval of my LTD claim is justified and warranted.[89]

69.  Habib responded the same day stating that

[a]t this point they are denying the claim.  Both plans have a pre-existing condition clause.  I fought extremely hard with Dearborn to have the exception approved for the STD but they will not approve the exception for the LTD. The claims examiner may request additional information to further process the claim however it is up to Dearborn to approve or deny.  Due to HIPAA regulations I do not have access to anything you or your doctor have sent them. I've attached information to apply for Social Security if you haven't already.

. . .

I've also attached the information regarding the plan that states it may not be payable if there is a pre-existing condition.  I wish I had a better outcome for you, however Dearborn does have the final say on this.[90]

70.  On March 22, 2018, Plaintiff filed a timely request for review of the denial of her claim for LTD benefits, which triggered a forty-five day decision window within which Dearborn was to notify her of its determination.  In support of her request for review Plaintiff argued that her disabling condition was not Oligodendroglioma,[91] but instead, "cognitive impairments that severely limit her ability to learn, remember, process information,

---

[89]AR 1237.

[90]Id.

[91]Agreed Finding of Fact 16 (citing AR 638-1285).

multitask and complete tasks in a timely manner, all indispensable aspects of her former duties."[92]

71. Plaintiff also wrote a letter explaining that

if I had not been led to believe by Situs and Dearborn National representatives that I would receive long-term disability benefits after my short-term disability benefits ended, I would have returned to Situs on September 9, 2017[,] and asked that I be reassigned to a position that could accommodate by neurological condition. However, since I believed that I would be receiving income from Dearborn National in the form of long-term disability benefits, I believed the best strategy for my long-term employment prospects would be to focus on my rehabilitation. Unfortunately, since Dearborn national denied my claim, that income has been lost, and I have been unable, despite diligent efforts, to secure alternative full-time employment. This is particularly difficult for me as I am unmarried and have no children. . . . I have nobody to provide for me other than myself.

I believe that I was entitled to long-term disability benefits from Dearborn National because I received short-term disability benefits from Dearborn National and because of repeated representations made to me by Dearborn National and Situs representatives that led me to believe that the benefits I received through my employment at Situs would not depend on whether or not I had a pre-existing condition.

Specifically, shortly after my employment at Situs (in October 2016), I attended a benefits orientation where Kyndria Perkins, the Benefits Coordinator for Situs, told those present, including myself, that we would be eligible for benefits whether or not we had pre-existing conditions and that "no questions" would be asked about our prior health in determining our eligibility for benefits. A Dearborn National representative, whose name I do not recall, also attended that meeting and did not correct Ms. Perkins' statement.

---

[92]AR 639.

At that time, I had a choice between applying for benefits as a "new hire" or applying for new benefits during the next open enrollment period (which began either in late November or December 2016). As Open Enrollment was only scheduled to begin a month after I was hired, I checked to see (while I was still eligible to receive benefits as a new hire) what forms I would need to complete for Open Enrollment. However, the online application I found for Open Enrollment through Situs' portal contained questions related to my prior health. As that seemed to conflict with what I had been told before, I inquired about the discrepancy and was told, in conversations with both Ms. Perkins and Jolene Turner (Situs Recruiting Coordinator), that only new hires were exempt from pre-existing condition exclusions and that I would be required to answer questions about my prior health (and that pre-existing condition exclusions would apply) if I waited until Open Enrollment to apply for benefits.

Prior to that point, I had intended to apply for benefits during Open Enrollment because I already had medical coverage under an individual Humana policy that I had obtained in the healthcare marketplace, for which I had already paid the premium, and under which I had already met the full deductibles for the policy for that year. However, based on what I had been told, since I could not apply for disability benefits unless I also obtained medical coverage through Situs, and since I wanted to have benefits with no pre-existing condition exclusions, I enrolled for benefits as a new hire, including medical coverage, and paid the premiums that were due effective as of the date of my employment with Situs (October 11, 2016). As part of my application for these new benefits, and consistent with what had been represented to me, I was not asked for and did not provide any information regarding my prior health. Applicable premiums for these benefits, including premiums for the period from the date I was hired through Open Enrollment, were subsequently deducted from my Situs paychecks.[93]

72. By letter dated May 1, 2018, Dearborn notified Plaintiff's counsel that it had requested more medical records,

---

[93]Agreed Finding of Fact 38 (citing AR 847-48).

that it was extending the deadline for its determination by forty-five days to June 15, 2018, and that the extension was necessary because it had not received all of Plaintiff's medical records.[94]

73. Dearborn sent letters to Plaintiff (through her counsel) regarding the need for additional medical records on May 22, 2018,[95] and again on May 31, 2018.[96]

74. Plaintiff filed this action on June 2, 2018, before Dearborn rendered a determination on her request for review.[97]

75. Dearborn continued to send letters to Plaintiff (through her counsel) regarding the need for additional information on July 11, 2018,[98] July 24, 2018[99], and July 27, 2018.[100]

76. On August 14, 2018, Dearborn denied Plaintiff's appeal.[101]

77. Finding that Plaintiff had filed her lawsuit prematurely, Magistrate Judge Johnson suggested a remand for the purpose of

---

[94]AR 1506.

[95]AR 1920.

[96]AR 1926.

[97]Complaint, Docket Entry No. 1.

[98]Agreed Finding of Fact 21 (citing AR 2054-55).

[99]Id. (citing AR 2062).

[100]Id. (citing AR 2064).

[101]Agreed Finding of Fact 22 (citing AR 2088-95).

supplementing the record with additional evidence, and on March 4, 2019, this action was remanded and stayed.[102]

78. Dearborn obtained additional documentation from M.D. Anderson, showing that on October 5, 2016, Plaintiff was evaluated by neuropsychologist Dr. Noll, who concluded that his evaluation revealed "impairments in learning and memory. . ."[103]

79. By letter dated July 16, 2019, Dearborn denied Plaintiff's appeal on remand.[104]

80. On August 5, 2019, Plaintiff submitted additional information for Dearborn to review, and on September 4, 2019, Magistrate Judge Johnson ordered Dearborn to consider that information.[105]

81. By letter dated October 4, 2019, Dearborn issued another letter denying Plaintiff's appeal.[106]

82. On October 28, 2019, the Magistrate Judge lifted the stay.[107]

---

[102]See Memorandum, Recommendation, and Order, Docket Entry No. 44; Order Adopting Magistrate Judge's Memorandum and Recommendation, Docket Entry No. 50 (granting Plaintiff's Motion to Remand and staying the case).

[103]Agreed Finding of Fact 25 (citing AR 2194-2196).

[104]Agreed Finding of Fact 26 (citing AR 2368-2372).

[105]Agreed Findings of Fact 26-27 (citing AR 2497-2537, and Order, Docket Entry No. 68).

[106]Id. (citing AR 2591-97).

[107]Order, Docket Entry No. 74.

# III. <u>Conclusions of Law</u>

Plaintiff argues that she is entitled to judgment on her ERISA estoppel claim because before she enrolled in the Situs Plan, "Defendants made several misrepresentations (and related non-disclosures) the gist of which was that [she] would not be subject to pre-existing condition exclusions if she enrolled for benefits as a new hire,"[108] and because "[a]fter she applied for STD benefits, Defendants . . . made . . . additional misrepresentations . . . regarding her eligibility for LTD benefits."[109] Asserting that she reasonably relied on Defendants' misrepresentations to her detriment, and that her extreme vulnerability and the fact that Defendants repeatedly misled her in response to numerous diligent inquiries constitute extraordinary circumstances, Plaintiff urges the court to enter judgment in her favor.[110] Defendants urge the court to deny Plaintiff's Motion for Judgment,[111] because Plaintiff fails to establish a material misrepresentation on which she reasonably relied to her detriment under extraordinary circumstances.[112]

---

[108]Plaintiff's Motion for Judgment, Docket Entry No. 136, p. 9 ¶ 1.

[109]<u>Id.</u>

[110]<u>Id.</u>

[111]Defendants' Response to Motion for Judgment, Docket Entry No. 141, p. 39 ¶ 73.

[112]<u>Id.</u> at 7 ¶ 3 and 15 ¶ 20.

## A.    Jurisdiction

1.    The court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, because the claims asserted are based on federal law, _i.e.,_ ERISA and federal common law developed pursuant thereto. See Estate of Bratton v. National Union Fire Insurance Company of Pittsburgh, PA, 215 F.3d 516, 520-21 (5th Cir. 2000) (citing 29 U.S.C. § 1132(a)(1)(B)).

2.    The court has jurisdiction over the parties.

3.    Venue is proper pursuant to 28 U.S.C. § 1391.

## B.    The Parties' Potential Liability

4.    The Fifth Circuit has recognized that proper defendants under ERISA include the employer, the employee benefit plan, and "the party that controls administration of the plan," including third-party administrators who "take on the responsibilities of the administrator."    LifeCare Management Services LLC v. Insurance Management Administrators, Inc., 703 F.3d 835, 845 (5th Cir. 2013) (quoting Gomez-Gonzalez v. Rural Opportunities, Inc., 626 F.3d 654, 665 (1st Cir. 2010)).  Thus, Situs as the sponsor and administrator of the Situs Plan, the Situs Plan, and Dearborn as the claims administrator of the Situs Plan, are all properly named as defendants in this action.

## C.    Federal Rule of Civil Procedure 52

5.    The court's ruling on a motion for judgment based on the administrative record is equivalent to a bench trial on the record with the court acting as the finder of fact. <u>See Muller v. First Unum Life Insurance Co.</u>, 341 F.3d 119, 124 (2d Cir. 2003). <u>See also Kearney v. Standard Insurance Co.</u>, 175 F.3d 1084, 1094-95 (9th Cir. 1999)(en banc) (in ERISA disability benefits case, "[a] majority of us conclude that, in its discretion . . . the district court may try the case on the record that the administrator had before it").

6.    In a trial on the record, the court evaluates the persuasiveness of conflicting evidence, decides which is more likely true, and makes findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a). <u>Id.</u> See also <u>Kearney,</u> 175 F.3d at 1095 ("In a trial on the record, but not on summary judgment, the judge can evaluate the persuasiveness of conflicting testimony and decide which is more likely true.").

7.    Federal Rule of Civil Procedure 52(a) requires the court conducting a bench trial to "find the facts specially and state its conclusions of law separately." A court's findings are sufficient to satisfy Rule 52 if they afford the reviewing court "a clear understanding of the analytical process by which the ultimate findings were reached." <u>Valley v. Rapides Parish School Board,</u> 118 F.3d 1047, 1053-54 (5th Cir. 1997). "Rule 52(a) does not require that the district court set out [its] findings on all factual questions that arise in the case." <u>Id.</u> at 1054.

**D. The Administrative Record**

8. For reasons stated by Magistrate Judge Johnson in the Memorandum and Recommendation issued on May 26, 2020, the administrative record closed on October 4, 2019, the date on which Defendants issued their final determination of Plaintiff's claim for LTD benefits at the administrative level.[113]

**E. Standard of Review**

9. The Fifth Circuit has recognized ERISA estoppel as a cognizable federal common law remedy. <u>Mello v. Sara Lee Corp.,</u> 431 F.3d 440, 444 (5th Cir. 2005) ("We now join other circuits in explicitly adopting ERISA-estoppel as a cognizable theory.").

10. Estoppel is an equitable remedy that "operates to place the person entitled to its benefit in the same position he would have been in had the representations been true." <u>CIGNA Corp. v. Amara,</u> 131 S. Ct. 1866, 1880 (2011) (citation omitted). <u>See also</u> <u>Geralds v. Entergy Services, Inc.,</u> 709 F.3d 448, 449-53 (5th Cir. 2013) (reversing dismissal of ERISA estoppel claim for compensatory money damages).

11. "Because the application of ERISA-estoppel is a legal theory rather than an interpretation of the Plan's terms, it should be reviewed <u>de novo</u>." <u>Mello,</u> 431 F.3d at 444 (citing <u>Rhorer v.</u>

---

[113]Memorandum and Recommendation, Docket Entry No. 108, p. 18. <u>See also</u> Order Adopting Magistrate Judge's Memorandum & Recommendation, Docket Entry No. 116.

*Raytheon Engineers and Constructors, Inc.,* 181 F.3d 634, 639 (5th Cir. 1999); and *Izzarelli v. Rexene Products Co.,* 24 F.3d 1506, 1514 (5th Cir. 1994) (noting that "in contrast to the great deference we grant the [administrator's] interpretations of the Plan, which involve contract interpretation, we accord no deference to [its] conclusions as to the controlling law, which involve statutory interpretation")(quotations and citations omitted)).

**F.    Elements of ERISA Estoppel**

12.    The elements of an ERISA estoppel claim are: (a) a material misrepresentation; (2) reasonable and detrimental reliance upon the misrepresentation; and (3) extraordinary circumstances. *Mello,* 431 F.3d at 444-45.[114] *See also High v. E-Systems, Inc.,* 459 F.3d 573, 579 (5th Cir. 2006).

13.    "A misrepresentation is material if there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed decision."    *Mello,* 431 F.3d at 445.

14.    A failure to disclose information, particularly if not done with intent to deceive, is not a material misrepresentation giving rise to an ERISA estoppel claim.    *See Khan v. American International Group, Inc.,* 654 F. Supp. 2d 617, 629 (S.D. Tex. 2009) (citing *Burstein v. Retirement Account Plan for Employees of*

_____

[114]Agreed Conclusion of Law 6.

Allegheny Health Education and Research Fund, 334 F.3d 365, 383 (3d Cir. 2003) ("[W]e have consistently rejected estoppel claims based on simple ERISA reporting errors or disclosure violations, such as . an omission in the disclosure documents.").

15. Detrimental reliance encompasses both reasonableness and injury. To establish this element, Plaintiff must have reasonably taken some action, or refrained from taking some action, regarding benefits as a result of Defendants' material misrepresentations. Plaintiff must also demonstrate that she relied upon Defendants' material misrepresentations in a way that later led to injury. See Pell v. E.I. DuPont de Nemours & Co., Inc., 539 F.3d 292, 301-03 (3d Cir. 2008) (citing Curcio v. John Hancock Mutual Life Insurance Co., 33 F.3d 226, 237 (3d Cir. 1994) (concluding that plaintiffs "suffered an injury in giving up an opportunity to accommodate their insurance needs through an independent insurance carrier because of their reasonable reliance on Capital Health's representations.")).

16. A plaintiff's reliance on informal documents or oral representations "can seldom, if ever, be reasonable or justifiable if [the documents or representations are] inconsistent with the clear and unambiguous terms of plan documents available or furnished to the [plaintiff]." Mello, 431 F.3d at 447 (quoting Sprague v. General Motors Corp., 133, F.3d 388, 404 (6th Cir.) (en banc), cert. denied, 118 S. Ct. 2312 (1998)).

17. Extraordinary circumstances require

(1) acts of bad faith; (2) attempts to actively conceal a significant change in the plan; (3) the commission of fraud; (4) circumstances where a plaintiff repeatedly and diligently inquired about benefits and was repeatedly misled; or (5) an especially vulnerable plaintiff.[115]

Brown v. Aetna Life Insurance Co., 975 F. Supp. 2d 610, 625-26 (W.D. Tex. 2013) (citing Burstein, 334 F.3d at 383; Kurz v. Philadelphia Electric Co., 96 F.3d 1544, 1553 (3d Cir. 1996), cert. denied, 117 S. Ct. 1247 (1997); and Curcio, 33 F.3d at 226). See also Cell Science Systems Corp. v. Louisiana Health Service, 804 F. App'x 260, 266 (5th Cir. 2020) (per curiam) ("Although . . . our court has not specifically defined the term, we have recognized the Third Circuit's approach with approval."); and High, 459 F.3d at 580 n. 3 (citing with favor, Curcio, 33 F.3d at 226, for its "in depth" discussion of what constitutes extraordinary circumstances).

18. Plaintiff, as the party seeking recovery, bears the burden of proof on each element of her estoppel claim. High, 459 F.3d at 579.

## G. Plaintiff Has Failed to Prove by a Preponderance of the Credible Evidence the Elements of an ERISA Estoppel Claim

Plaintiff argues that Defendants made material misrepresentations both before and after she enrolled in the Situs Plan, that she reasonably relied on Defendants' material misrepresentations to her detriment, and that Defendants' material

---

[115]Agreed Conclusion of Law 10.

-37-

misrepresentations were made under extraordinary circumstances. Asserting that they did not make any material misrepresentations, Defendants argue that even if they did, they did not do so under extraordinary circumstances, and Plaintiff did not reasonably rely on any material misrepresentation to her detriment.

(i)    The Alleged Misrepresentations

Asserting that Defendants' misrepresentations started before she enrolled in the Situs Plan and continued throughout her employment by Situs, Plaintiff argues that Defendants made sixteen material misrepresentations as to whether pre-existing conditions could preclude her from receiving benefits under the terms of the Situs Plan, and whether the scope of the waiver that she received for the pre-existing conditions exclusion applicable to her claim for STD benefits extended to her claim for LTD benefits.[116]   The sixteen representations about which Plaintiff complains consist of three pre-enrollment representations, and thirteen post-enrollment representations.  Defendants argue that none of the representations about which Plaintiff complains were materially false or misleading, that Plaintiff's account of the representations lacks credibility, and that the representations are not

_____

[116]Plaintiff's Motion for Judgment, Docket Entry No. 136, pp. 13-23 ¶¶ 10-31.  See also Ms. Bunner's Reply in Support of Motion for Judgment on ERISA Estoppel ("Plaintiff's Reply"), Docket Entry No. 146, pp. 37-45 ¶¶ 68-92.

misrepresentations at all but, instead, misunderstandings or representations made during the claims process, which the court has already held was full and fair.[117]

(a) Defendants' Pre-Enrollment Representations Were Material Misrepresentations

19. Plaintiff argues, and the court concludes, that Defendants made material misrepresentations when, at a benefits orientation Plaintiff attended in October of 2016, Situs's Benefits Coordinator, Perkins, told the attendees that they would be eligible for benefits under the Situs Plan whether or not they had pre-existing conditions and that no questions would be asked about prior health in determining their eligibility for benefits.

20. Perkins' statements at the benefits orientation were false and, therefore, misrepresentations, because as stated above in § II.B, Findings of Fact 13-14 and 18-19, the Situs Plan's STD and LTD insurance both contained pre-existing conditions exclusions that did not exempt new hires.

21. Perkins' statements at the benefits orientation were material because there is a substantial likelihood that they would

---

[117]Defendants' Response to Motion for Judgment, Docket Entry No. 141, pp. 15-22 ¶¶ 20-35 (pre-enrollment representations), and 30-34 ¶¶ 54-57 (post-enrollment representations). <u>See also</u> Memorandum and Recommendation, Docket Entry No. 108, pp. 26-31 (holding that administrative review was full and fair); and Order Adopting Magistrate Judge's Memorandum and Recommendation, Docket Entry No. 116.

mislead a reasonable employee in making an adequately informed decision about whether to enroll in the Situs Plan. <u>Mello,</u> 431 F.3d at 445.

22. Plaintiff argues, and the court concludes, that Defendants made material misrepresentations to Plaintiff when, later in October of 2016 in response to her questions about the Situs Plan's pre-existing conditions exclusions, Perkins and Situs's Recruiting Coordinator, Turner, told Plaintiff that only new hires were exempt from the preexisting conditions exclusions and were able to enroll in the Situs Plan without answering questions about prior health, and that if she waited until Open Enrollment she would be required to answer questions about her prior health and would be subject to the pre-existing conditions exclusions.

23. Perkins' and Turner's responses to Plaintiff's questions were false and, therefore, misrepresentations, because the Situs Plan's STD and LTD insurance both contained pre-existing conditions exclusions, and new hires were not exempt from those exclusions.

24. Perkins' and Turner's responses to Plaintiff's questions were material because there is a substantial likelihood that they would mislead a reasonable employee in making an adequately informed decision about whether and when to enroll in the Situs Plan. <u>Mello,</u> 431 F.3d at 445.

25. Plaintiff argues, and the court concludes, that Defendants made material misrepresentations by providing her a new hire enrollment form that did not ask prior health questions after providing her an open enrollment form that did ask prior health questions.

26. The difference between the enrollment form for new hires and the open enrollment form provided to plaintiff was a misrepresentation because new hires were not exempt from the pre-existing condition exclusions to which the Situs Plain's STD and LTD insurance were both subject.

27. The difference between the enrollment form for new hires and the open enrollment form provided to plaintiff was material because there is a substantial likelihood that the difference would mislead a reasonable employee in making an adequately informed decision about whether and when to enroll in the Situs Plan. Mello, 431 F.3d at 445.

28. Defendants challenge the credibility of Plaintiff's account of the pre-enrollment representations on which she bases her ERISA estoppel claim by arguing that

> the only evidence Plaintiff has submitted in support of her "pre-coverage" ERISA-estoppel claim is her own unsupported statement, detailing oral communications she had with Situs personnel on two occasions nearly 18 months previously, when her own attorney contends the causes of her alleged disability include cognitive impairments that severely limit her ability to learn, remember and process information. AR 657. The unsupported statement is further undermined by

Plaintiff's contention that she paid premiums, when LTD premiums were paid by her employer.[118]

Defendants' challenge to Plaintiff's credibility ignores evidence that corroborates the veracity of Plaintiff's account of the material misrepresentations made by Perkins and Turner in October of 2016. As detailed above in § II.D, Findings of Fact 40-41, following Dearborn's initial denial of Plaintiff's claim for STD benefits, Dearborn's claim notes contain an email dated April 6, 2017, 3:34 p.m., showing that Dearborn's representative in Houston asked that Plaintiff's claim be excepted from the pre-existing condition exclusion because

> [p]er employee and employer they were told that no pre-ex would apply to the VSTD. ER is insisting that she has never seen a VSTD policy with a pre-x clause included. . . . She also stated that we would waive the prex for new hires that had prior coverage. We are asking that the above claim be processed without Pre-X.[119]

Dearborn's claim notes also contain a second email dated April 6, 2017, 6:29 p.m., showing that the exception request was forwarded to others together with the following explanatory note:

> Former sales rep sent an email to the broker stating that the pre-ex did not pertain to existing employees or employees that were being acquired and had prior coverage -- email attached.
>
> Claim has been denied -- Lisa Bunner[.]

---

[118]Defendants' Response to Motion for Judgment, Docket Entry No. 141, p. 20 ¶ 31. See also AR 848 (Plaintiff's March 22, 2018, Letter to Dearborn in support of her request for review).

[119]AR 118 and 753.

> Request to remove the pre-ex for the existing
> employees as stated in Christy's email to the broker[.][120]

Accordingly, the court concludes that Plaintiff's statements that in October of 2016 Perkins and Turner made the material misrepresentations that she says they made are credible, and Defendants' contention to the contrary is unfounded.

29. Asserting that a Dearborn representative was present at the October 2016 benefits orientation but did not correct Perkins' material misrepresentations, Plaintiff argues that the Dearborn representative's silence is a material misrepresentation by omission. Because Plaintiff is unable to identify the Dearborn representative, and has not offered any evidence that the Dearborn representative had a duty to correct Perkins' misrepresentations or remained silent because of an intent to deceive, the court concludes that the Dearborn representative's failure to correct Perkins' material misrepresentations does not constitute either an adoption of those misrepresentations or a material misrepresentation by omission. See Khan, 654 F. Supp. 2d at 629 (citing Burstein, 334 F.3d at 383).

### (b) Defendants' Post-Enrollment Representations Were Not Material Misrepresentations

Plaintiff argues that Defendants made six post-enrollment representations related to her claim for STD benefits and seven

_____

[120]AR 752.

post-enrollment representations about her claim for LTD benefits,[121] which "were false or misleading in that STD benefits and LTD benefits were both subject to a **Pre-existing condition** exclusion and new hires were not exempt or otherwise excepted from that exclusion."[122] Plaintiff argues that many of these thirteen post-enrollment representations, *i.e.*, (4)-(14) and (16), "were also false or misleading in that Defendants did not disclose that: (i) the exception was a limited waiver; (ii) the exception/limited waiver only applied to STD benefits; and (iii) [she] would not be eligible for LTD benefits if she had a pre-existing condition."[123] Although not expressly stated in her papers, Plaintiff appears to contend that Defendants' post-enrollment misrepresentations were material because "there is a substantial likelihood that [they] would mislead a reasonable employee in making an adequately informed decision," Mello, 431 F.3d at 445, about whether to return to work when STD benefits expired.[124]

---

[121]Plaintiff's Motion for Judgment, Docket Entry No. 136, pp. 20-21 ¶ 25(4)-(16) (quoting Plaintiff's Proposed Findings of Fact 129 (4)-(16), Docket Entry No. 128-7, pp. 57-58).

[122]Id. at 21 ¶ 26 (emphasis in original).

[123]Id.

[124]Id. at 24 ¶ 32. See also Plaintiff's Reply, Docket Entry No. 146, p. 48 ¶ 101.

(I)   Post-Enrollment   Representations   About   STD
      Benefits

30.   Plaintiff argues that Defendants made six post-enrollment
representations (4)-(9) related to her claim for STD benefits that
were materially false and misleading both for what they disclosed
and what they failed to disclose.[125]   Defendants argue, and the
court concludes, that because, as detailed above in § II.D,
Findings of Fact 40-49, Defendants waived the pre-existing
conditions exclusion applicable to Plaintiff's claim for STD
benefits, granted Plaintiff's claim for STD benefits, and paid
Plaintiff the maximum amount of STD benefits available, the six
post-enrollment representations related to her claim for STD
benefits were not materially false or misleading either for what
they disclosed or failed to disclose.   Nevertheless, for the sake
of completeness the court addresses each of these six
representations individually.                                    .

31.   Representation (4) identifies as a misrepresentation

> after Ms. Bunner applied for STD benefits,
> Situs sending Ms. Bunner an email advising her
> that "the exception to have this approved . .
> . has been submitted" and that Defendants
> were doing "everything possible to get it
> reviewed and approved and paid as fast as
> possible" (see Ms. Bunner's Proposed Findings
> ¶ 23).[126]

---

[125]Id. at 20-21 ¶¶ 25-26.

[126]Id. at 20 ¶ 25(4) (citing Plaintiff's Proposed Findings of
Fact 23 and 129(4), Docket Entry No. 128-7, pp. 12 (citing AR 848,
                                                     (continued...)

As detailed above in § II.D, Finding of Fact 42, this representation derives from an email sent to Plaintiff by Situs' Benefits Coordinator, Mary Habib ("Habib") on April 7, 2017. As detailed above in § II.D, Findings of Fact 40-41 and 43-49, on April 6, 2017, Situs sought an exception so that Plaintiff's claim for STD benefits could be processed and approved despite the pre-existing conditions exclusion, and Plaintiff's claim for STD benefits was approved only five days later on April 12, 2017. Accordingly, the court concludes that Representation (4) was neither false nor misleading and therefore not a misrepresentation.

32. Representation (5) identifies as a misrepresentation "Situs telling Ms. Bunner via email that it 'received notification that the claim has been approved' (see Ms. Bunner's Proposed Findings ¶ 23)."[127] As detailed above in § II.D, Finding of Fact 48, this representation derives from an email that Habib sent to Plaintiff on April 12, 2017. As detailed in § II.D, Findings of Facts 44-46 and 49, Plaintiff's claim for STD benefits was approved on April 12, 2017. Accordingly, the court concludes that Representation (5) was neither false nor misleading and therefore not a misrepresentation.

---

[126](...continued)
and 1229), and 57.

[127]Id. ¶ 25(5)(citing Plaintiff's Proposed Findings of Fact 23 and 129(5), Docket Entry No. 128-7, pp. 13 (citing AR 1230), and 57).

33. Representation (6) identifies as a misrepresentation

> Dearborn National verbally telling Ms. Bunner that her
> claim had been approved based on an exception (after
> Dearborn National sent her a letter denying her STD
> benefits based on a pre-existing condition exclusion)
> (see Ms. Bunner's Proposed Findings ¶¶ 18, 20, 23).[128]

As detailed above in § II.D, Finding of Fact 47, this representation derives from a telephone call that Plaintiff received from STD Claims Examiner Roy on April 12, 2017. As detailed in § II.D, Findings of Fact 37-38, Plaintiff's claim for STD benefits was initially denied based on the pre-existing conditions exclusion, but as detailed in § II.D, Findings of Fact 40-49, that decision was later reversed following Situs's request for an exception in Plaintiff's case. Accordingly, the court concludes that Representation (6) was neither false nor misleading and therefore not a misrepresentation.

34. Representation (7) identifies as a misrepresentation "Dearborn National sending Ms. Bunner a letter stating that her 'benefits have been approved to 08/28/17' (see Ms. Bunner's Proposed Findings ¶¶ 23, 24, 25)."[129] As detailed above in § II.D, Finding of Fact 49, this representation derives from a letter dated April 12, 2017, that Dearborn sent to Plaintiff notifying her that

---

[128]Id. ¶ 25(6)(citing Plaintiff's Proposed Findings of Fact 18, 20, 23, and 129(6), Docket Entry No. 128-7, pp. 10 (citing AR 757-61, 848), 11 (citing AR 759), 13 (citing AR 1230), and 57).

[129]Id. ¶ 25(7)(citing Plaintiff's Proposed Findings of Fact 23, 24, 25, and 129(7), Docket Entry No. 128-7, pp. 12-14 (citing AR 739-41), and 57).

her claim for STD benefits had been approved to August 28, 2017, the date she expected to return to work. Accordingly, the court concludes that Representation (7) was neither false nor misleading and therefore not a misrepresentation.

35. Representation (8) identifies as a misrepresentation "Dearborn National sending Ms. Bunner a second letter approving her STD benefits through September 9, 2017 (the STD benefit maximum) (see Ms. Bunner's Proposed Findings ¶¶ 27, 39, 40)."[130] As detailed above in § II.D, Finding of Fact 57, the representation cited in this representation derives from a letter dated August 23, 2017, that Dearborn sent to Plaintiff notifying her that her STD benefits had been extended to September 9, 2017. As detailed above in § II.D, Finding of Facts 55-56, Dearborn sent Plaintiff the August 23, 2017, letter in response to the notice that she provided to Dearborn by email dated August 22, 2017, that her doctors would not be releasing her to return to work, and the telephone conversation that she had with Alan Roy on August 23, 2017, during which she again noticed Dearborn that she would not be returning to work as planned but, instead, would be moving to LTD. Accordingly, the court concludes that Representation (8) was neither false nor misleading and therefore not a misrepresentation.

---

[130] Id. ¶ 25(8)(citing Plaintiff's Proposed Findings of Fact 27, 39, 40, and 129(8), Docket Entry No. 128-7, pp. 14, 19-20 (citing AR 727-29 and 849), and 58).

36.   Representation (9) identifies as a misrepresentation "Dearborn National paying weekly STD benefits to Ms. Bunner until she had received the maximum STD benefits available to her (see Ms. Bunner's Proposed Findings ¶ 27)."[131]  As detailed above in § II.D, Finding of Fact 59, Dearborn paid Plaintiff the maximum amount of STD benefits available under the Situs Plan. Accordingly, the court concludes that Representation (9) was neither false nor misleading and therefore not a misrepresentation.

37.   Plaintiff argues that each of the six representations about her claim for STD benefits

> were also false or misleading in that Defendants did not
> disclose that: (i) the exception was a limited waiver;
> (ii) the exception/limited waiver only applied to STD
> benefits; and (iii) [she] would not be eligible for LTD
> benefits if she had a pre-existing condition.[132]

But because these representations specifically referred to Plaintiff's claim for STD benefits, because as detailed above, in § II.B, Findings of Fact 13-14 and 18-19, the Situs Plan's STD and LTD benefits were governed by different pre-existing conditions exclusions, and as detailed above, in § II.D, Findings of Fact 50-58, when Defendants made the representations related to Plaintiff's claim for STD benefits, neither Plaintiff nor Defendants knew that she would later make a claim for LTD benefits, the court concludes

---

[131]Id. ¶ 25(9)(citing Plaintiff's Proposed Findings of Fact 27 and 129(9), Docket Entry No. 128-7, pp. 14 (citing AR 721), and 58).

[132]Id. at 21 ¶ 26.

-49-

that Defendants's failure to disclose that the waiver she received for her STD claim did not extend to her LTD claim was neither false nor misleading and therefor not a misrepresentation by omission.[133]

> (II) Post-Enrollment Representations About LTD Benefits

Seven of the 13 post-enrollment representations (10)-(16) are statements made to Plaintiff about her claim for LTD benefits. Like the post-enrollment representations about her claim for STD benefits, Plaintiff argues that these representations were all false or misleading because LTD benefits were subject to a pre-existing conditions exclusion and new hires were not exempt or otherwise excepted from that exclusion, and that six of them (10)-(14) and (16) were also false and misleading because they failed to disclose that the waiver from the pre-existing conditions exclusion applicable to her claim for STD benefits did not extend to her claim for LTD benefits. For the reasons stated below with respect to each representation, the court concludes that the seven post-enrollment representations related to Plaintiff's claim for LTD benefits were not materially false or misleading either for what they disclosed or failed to disclose.

---

[133]See Memorandum and Recommendation, Docket Entry No. 108, p. 33 ("when Defendants waived the pre-existing condition exclusion with respect to Plaintiff's STD claim, they were unaware that [she] would also be making a LTD benefits claim"). See also Order Adopting Magistrate Judge's Memorandum and Recommendation, Docket Entry No. 116.

38. Representation (10) identifies as a misrepresentation "Situs telling Ms. Bunner that she would be eligible for LTD benefits when her STD benefits expired (see Ms. Bunner's Proposed Findings ¶ 34)."[134] As evidence that Situs told her she would be eligible for LTD benefits when her STD benefits expired, Plaintiff cites notes made by her vocational counselor in July of 2017, and the intake interview for her LTD benefits claim conducted by LTD Claims Examiner Briggs on September 14, 2017.

The evidence that Plaintiff cites does not show that Defendants made material misrepresentations as to whether pre-existing conditions could preclude her from receiving benefits under the terms of the Situs Plan, or whether the scope of the waiver that she received for the pre-existing condition exclusion applicable to her claim for STD benefits extended to her claim for LTD benefits. To the contrary, as detailed above in § II.D, Findings of Fact 50-51, the notes made by Plaintiff's vocational counselor show that on July 5, 2017, Plaintiff told the counselor that she was unsure if she was eligible for LTD benefits, and that a week later on July 12, 2017, Plaintiff "reported that she spoke

---

[134]Plaintiff's Motion for Judgment, Docket Entry No. 136, p. 20 ¶ 25(10) (citing Plaintiff's Proposed Findings of Fact 34 and 129(10), Docket Entry No. 128-7, p. 17 (citing AR 1391 and Audio Transcription of: Phone Conversations 9-14-17, Docket Entry No. 100-12, p. 24:12-22), and 58).

with her HR and she is eligible for LTD."[135]  The counselor's notes do not mention the pre-existing conditions exclusions or the waiver that Plaintiff received from that exclusion for her STD benefits claim.  Moreover, during the September 14, 2017, intake interview, Briggs told Plaintiff, "I did notice that you might be subject to pre-x [sic] -- so pre-existing.  I did see that in STD, in the short-term disability, that they have said something about that as well, but it was able to be waived."[136]  Accordingly, the court concludes that the statements referenced in Representation (10) were not false or misleading and therefore not misrepresentations either for what they disclosed or failed to disclose, and that even if the statements were false or misleading, they were not material because they would not mislead a reasonable employee in making an adequately informed decision about whether to return to work when their STD benefits expired.

39.  Representation (11) alleges that

> when asked by Ms. Bunner, what would happen if Ms. Bunner's doctors did not release her to go back to work by the time her STD benefits expired, Dearborn National telling Ms. Bunner that "if they don't [release you to return to work], that's not a big deal," that she had LTD, that "it would go to long-term disability, and then [Dearborn National] would just need verification

---

[135]AR 1391.

[136]Audio Transcript of Phone Conversation 9-14-17, Docket Entry No. 100-12, p. 35:21-25.

-52-

> from your physician that they're going to extend your
> claim (see Ms. Bunner's Proposed Findings ¶ 35)."[137]

As detailed above in § II.D, Finding of Fact 52, this representation derives from a telephone conversation that Plaintiff had with STD Claims Examiner Roy on August 1, 2017. As detailed above in § II.B, Findings of Fact 9-12, and 17, because Plaintiff voluntarily enrolled for the Situs Plan's STD benefits, she was automatically enrolled for the Situs Plan's LTD benefits. Roy did not tell Plaintiff that any claim she made for LTD benefits would be approved. Instead, Roy told her that he would send her claim to long-term disability, and that "they can nine times out of ten, probably get it — get it going."[138] Accordingly, the court concludes that the statements referenced in Representation (11) were not false or misleading and therefore not misrepresentations either for what they disclosed or failed to disclose, and that even if the statements referenced in Representation (11) were false or misleading, they were not material because they would not mislead a reasonable employee in making an adequately informed decision about whether to return to work when their STD benefits expired.

40. Representation (12) alleges that

> when asked by Ms. Bunner, what Dearborn National would
> need to transition her to LTD benefits, Dearborn National

---

[137]Plaintiff's Motion for Judgment, Docket Entry No. 136, p. 20 ¶ 25(11) (citing Plaintiff's Proposed Findings of Fact 35 and 129(11), Docket Entry No. 128-7, pp. 18 (citing AR 2411-12), and 58).

[138]AR 2411 (Transcription of Audio File Lisa Bunner and Alan Roy, August 1, 2017, p. 3:21-23).

telling Ms. Bunner that it would only need information from July 1, 2017[,] to present and that "once they get your claim approved through the maximum duration of short term they'll send it automatically to long term. . ." (<u>see</u> Ms. Bunner's Proposed Findings ¶ 37)."[139]

As detailed above in § II.D, Finding of Fact 54, this representation derives from a telephone conversation that Plaintiff had with Denise Soto on August 21, 2017. Plaintiff spoke with Soto because she was unable to reach Roy. Plaintiff told Soto that she was transferring from short- to long-term disability and that her doctor wanted to know if there were any forms that needed to be filled out. Soto told Plaintiff that she saw her approval letter from April 12, 2017, which was her approval for STD benefits.[140] Soto also told Plaintiff that Dearborn needed her medical information from July 1, 2017, in order to extend her STD benefits to the maximum, and that once that was done, her claim would automatically be sent to long-term. As detailed above in § II.D, Findings of Fact 56-57, Dearborn extended Plaintiff's STD benefits to September 9, 2017, which was the maximum time available. Accordingly, the court concludes that the statements referenced in Representation (12) were not false or misleading and therefore were not misrepresentations either for what they disclosed or failed to

---

[139]Plaintiff's Motion for Judgment, Docket Entry No. 136, p. 20 ¶ 25(12) (citing Plaintiff's Proposed Findings of Fact 37 and 129(12), Docket Entry No. 128-7, pp. 18 (citing Transcript of August 21, 2017, Audio Transcription of: Phone Conversation 8-21-17, Docket Entry No. 100-7, pp. 2:5-5:3), and 58).

[140]<u>See</u> AR 104-06.

disclosed, and that even if the statements were false or misleading, they were not material because they would not mislead a reasonable employee in making an adequately informed decision about whether to return to work when their STD benefits expired.

41. Representation (13) alleges that

> when Ms. Bunner expressed her understanding to Situs that she would transition to LTD benefits when her STD benefits ended, Situs failing to advise Ms. Bunner that: (i) the exception was a limited waiver; (ii) the exception/limited waiver only applied to STD benefits; and (iii) Ms. Bunner would not be eligible for LTD benefits if she had a pre-existing condition (see Ms. Bunner's Proposed Findings ¶¶ 36, 38)."[141]

As detailed above in § II.D, Findings of Fact 53 and 55, the statements referenced in Representation (13) derive from emails that Plaintiff sent to Situs' Benefits Coordinator, Habib, on August 7 and August 22, 2017, in which Plaintiff informed Situs that her doctors would not be releasing her to return to work at the end of August as expected. Because, as detailed above in § II.B, Findings of Fact 13-14 and 18-19, the Situs Plan's STD and LTD benefits were governed by different pre-existing conditions exclusions, the court concludes that Defendants' failure to make the disclosures about which Plaintiff complains in Representation (13) were misrepresentations by omission, and that even if they were misrepresentations by omission, they were not material because

---

[141]Plaintiff's Motion for Judgment, Docket Entry No. 136, pp. 20-21 ¶ 25(13)(citing Plaintiff's Proposed Findings of Fact 36, 38, and 129(13), Docket Entry No. 128-7, pp. 18-19 (citing AR 849, 1231-33), and 58).

they would not mislead a reasonable employee in making an adequately informed decision about whether to return to work when their STD benefits expired.

42. Representation 14 alleges that

> when Ms. Bunner reported that she was still undergoing occupational therapy and did not know when she would be released to return to work — Dearborn National telling Ms. Bunner that her STD benefits would be extended to the maximum so that there would be "no lapse in payment" and that her file would be sent to LTD right then so there would not be a "huge gap, in, like, your payments" while the LTD department processed her claim (see Ms. Bunner's Proposed Findings ¶ 39)."[142]

As detailed above in § II.D, Findings of Fact 56, these representations derive from a telephone conversation that Plaintiff had with STD Claims Examiner Roy on August 23, 2017, during which Plaintiff informed him that her doctors would not be releasing her to return to work at the end of August as previously expected. When read in context of the entire conversation, Roy's statements that he would extend Plaintiff's STD benefits to the maximum so that there would be no lapse in payment indicated that there would be no lapse in payment of her STD benefits, which had been approved only to the end of August 2017, and needed to be extended to the maximum limit, September 9, 2017, before her claim could be sent to LTD. Roy did not tell Plaintiff that her claim for LTD benefits

---

[142]Id. at 21 ¶ 25(14)(citing Plaintiff's Proposed Findings of Fact 39 and 129(13), Docket Entry No. 128-7, pp. 19 (citing AR 849, 1231-33), and 58).

would be approved or that there would be no lapse in payments between STD and LTD payments. Instead, Roy told Plaintiff

> I'm going to extend your claims so there's no lapse in payment. . . . I had you approved to the 30th anyway's. So I'll approve you to the 9th. That's your maximum benefit. . . And then I'll send your file to long-term disability. They may need some stuff, and I don't really know what they are going to need, but just in case, I don't want there to be like a huge gap in, like, your payments.[143]

Accordingly, the court concludes that the statements referenced in Representation (14) were not false or misleading and therefore were not misrepresentations either for what they disclosed or failed to disclose, and that even if the statements were false or misleading, they were not material because they would not mislead a reasonable employee in making an adequately informed decision about whether to return to work when their STD benefits expired.

43. Representation (15) identifies as a misrepresentation

> Dearborn National sending Ms. Bunner a letter on August 23, 2017[,] advising her that her file had been referred to the LTD Department for processing and that she would be contacted by an LTD representative within 10 days of her claim being assigned (see Ms. Bunner's Proposed Findings ¶ 40)."[144]

---

[143]Audio Transcription of: Phone Conversations 8-23-17, Docket Entry No. 100-9, p. 4:8-17. See also Plaintiff's Proposed Finding of Fact 39, Docket Entry No. 128-7, p. 19.

[144]Plaintiff's Motion for Judgment, Docket Entry No. 136, p. 21 ¶ 25(15) (citing Plaintiff's Proposed Findings of Fact 40 and 129(15), Docket Entry No. 128-7, pp. 19-20 (citing AR 727-30, 849, 894, and Audio Transcription of: Phone Conversations 9-11-17, Docket Entry No. 100-11), and 58).

As detailed above in § II.D, Findings of Fact 57, these
representations derive from an August 23, 2017, letter that
Dearborn sent to Plaintiff to inform her that her STD benefits had
been extended to September 9, 2017, and that her file had been sent
to the LTD department for processing.  As detailed above in § II.E,
Findings of Fact 61-63, Plaintiff's claim for LTD benefits was sent
to an LTD representative and processed.  Plaintiff argues that
Representation (15)

> was false and misleading in that Dearborn National
> represented that [she] would be contacted within 10 days
> by an LTD representative when, in fact, Defendants did
> not intend to contact [her] until after she did not
> return to work at Situs on September 10, 2017 (and her
> employment at Situs could thereby be terminated).[145]

But missing from the record is any evidence that when Dearborn sent
Plaintiff the August 23, 2017, letter, Dearborn did not intend for
a LTD representative to contact her until after she failed to
return to work at Situs on September 10, 2018.  Moreover, Plaintiff
offers no evidence that Dearborn delayed contacting her after the
ten days stated in the August 23, 2017, letter in order to deceive
her or to induce her into taking an action that disadvantaged her
or advantaged Defendants.  Accordingly, the court concludes that
the statements referenced in Representation (15) were not false or
misleading and therefore not misrepresentations either for what
they disclosed or failed to disclose, and that even if the

---

[145]Id. at 21-22 ¶ 26.

statements were false or misleading, they were not material because they would not mislead a reasonable employee in making an adequately informed decision about whether to return to work when their STD benefits expired.

44. Representation (16) alleges that

> when asked by Ms. Bunner by email if payment would
> continue as usual or [would] there be a lapse," Dearborn
> National responding by email that "LTD is every month so
> it will pay at the end of month cycle" (see Ms. Bunner's
> Proposed Findings ¶ 41)."[146]

As detailed above in § II.D, Finding of Fact 58, this representation derives from an exchange of emails between Plaintiff and STD Claims Examiner Roy on September 7 2017. Roy's response to Plaintiff's question was not a statement that Plaintiff would receive LTD benefits, but only a statement that LTD benefits were paid monthly. As evidenced from her previous communications with Roy, particularly the telephone conversations on August 1, 2017, described above in § II.D, Finding of Fact 52, and on August 23, 2017, described above in § II.D, Finding of Fact 56, Roy previously told Plaintiff that her claim for LTD benefits had to be processed by an LTD representative, that he did not know what would be needed to process her claim, and that if her claim for LTD benefits was approved there could be a gap between her STD and LTD payments. Accordingly, the court concludes that the statements referenced in

---

[146]Plaintiff's Motion for Judgment, Docket Entry No. 136, p. 21 ¶ 25(16) (citing Plaintiff's Proposed Findings of Fact 41 and 129(16), Docket Entry No. 128-7, pp. 20(citing AR 2451), and 58).

Representation (16) were not misrepresentations either for what they disclosed or failed to disclose, and that even if the statements were false or misleading, they were not material because they would not mislead a reasonable employee in making an adequately informed decision about whether to return to work when their STD benefits expired.

### (ii) Reasonable and Detrimental Reliance

Plaintiff argues that she reasonably and detrimentally relied on Defendants' pre-enrollment misrepresentations by enrolling in the Situs Plan as a new hire instead of waiting until the Open Enrollment period, and that she reasonably and detrimentally relied on Defendants' post-enrollment misrepresentations by choosing not to return to work on September 10, 2017, when her STD benefits expired.[147]

#### (a) Plaintiff Has Established by a Preponderance of the Credible Evidence that She Reasonably and Detrimentally Relied on Defendants' Pre-Enrollment Material Misrepresentations

##### (I) Plaintiff's Reliance on Defendants' Pre-Enrollment Misrepresentations Was Reasonable

Plaintiff argues that a preponderance of the evidence establishes that she reasonably relied on Defendants' pre-enrollment material misrepresentations because

---

[147]Id. at 23-24 ¶ 32.

> Defendants did not furnish or otherwise make available
> the Group Long Term Disability Insurance: Employee
> Benefit Booklet or any other document containing a
> summary plan description of LTD benefits to [her] until
> October 10, 2017,[148]

until approximately one year after October of 2016 when the pre-enrollment material misrepresentations were made.

Citing Mello, 431 F.3d at 446, and High, 459 F.3d at 580, Defendants argue that Plaintiff could not have reasonably relied on Defendants' pre-enrollment material misrepresentations because every employee benefit plan must be established and maintained pursuant to a written instrument, and the misrepresentations about which Plaintiff complains contradicted unambiguous terms of written Situs Plan documents.[149] Asserting that "Plaintiff alleges only that she did not receive summary plan descriptions, AR 847; . . . [and that s]he does not allege that she did not receive or was not furnished the plans themselves[,] AR 845-50," Defendants argue that "[t]his distinction is critical, as it is the plans themselves that govern, not the plan summaries."[150] Defendants argue that "even if she had had the summary plan descriptions at the time she chose to

---

[148]Id. at 26-27 ¶ 38 (Plaintiff also argues that "[t]he preponderance of the evidence also establishes that Defendants did not furnish or otherwise make available the Voluntary Short Term Disability Insurance: Employee Benefit Booklet or any other document containing a summary plan description of STD benefits to [her] until August 1, 2018.").

[149]Defendants' Response to Motion for Judgment, Docket Entry No. 141, pp. 22-26 ¶¶ 36-40.

[150]Id. at 23-24 ¶ 36.

enroll in the plans, Plaintiff could not rely on the summaries, as they do not constitute the plans themselves,"[151] and "the plan summaries say nothing at all about any plan exclusions."[152]

45. Plaintiff argues, and the court concludes, that Plaintiff's reasonable reliance on Defendants' pre-enrollment material misrepresentations was detrimental. In <u>High</u> the Fifth Circuit observed that "a 'party's reliance can seldom, if ever, be reasonable or justified if it is inconsistent with the clear and unambiguous terms of plan documents available to or furnished to the party.'" 459 F.3d at 580 (quoting <u>Sprague,</u> 133 F.3d at 404. <u>See also Mello,</u> 431 F.3d at 446 (same). Here, Plaintiff has offered uncontradicted evidence that Defendants did not furnish or otherwise make available to her either the Group Long Term Disability Insurance: Employee Benefit Booklet, the only written plan document contained in the administrative record, or any other written document describing the Situs Plan's LTD insurance, until after Defendants denied her claim for LTD benefits.

Courts, including courts in the Fifth Circuit, have recognized that reliance on oral representations can sometimes be reasonable in the absence of written plan documents. <u>See Belmonte v. Examination Management Services, Inc.,</u> 730 F. Supp. 2d 603, 606-07 (W.D. Tex. 2010) ("Although [the parties] spoke only twice about

---

[151]<u>Id.</u> at 24.

[152]<u>Id.</u> ¶ 37.

[the participant's] retirement benefits, the lack of a written document to put [the participant] on notice that the plan was different than his expectations makes it more plausible that he would rely on oral representations."); Malbrough v. Kanawha Insurance Co., 943 F. Supp. 2d 684, 696 (W.D. Tex. 2013) (denying summary judgment to permit discovery as to whether the participant had been provided with a copy of the plan's terms observing that "[i]t is uncertain whether the Mello court would have found it unreasonable for [the participant] to rely on the [company's] website, particularly if the plaintiffs are correct in guessing that [the participant] might not have been provided with a Certificate that explained the Policy terms").

### (II) Plaintiff's Reliance on Defendants' Pre-Enrollment Misrepresentations Was Detrimental

Plaintiff argues that a preponderance of the evidence establishes two forms of detrimental reliance. Plaintiff argues that she

> reasonably relied to her detriment on Defendants' [pre-enrollment] misrepresentations and related non-disclosures by applying [for] and paying a premium for disability benefits and by applying for benefits, including medical coverage, as a new hire instead of during open enrollment, and paying additional premiums associated with that early enrollment. . . . [and that she] also relied to her detriment in that Defendants' misrepresentations and related non-disclosures deprived [her] of the ability and opportunity to make an educated choice as to whether to seek disability benefits from

Defendants or to obtain alternative benefits in the insurance marketplace.[153]

Defendants argue that Plaintiff's reliance on their material misrepresentations was not detrimental because while she paid premiums for STD coverage,

> [s]he received the maximum STD benefit; paid nothing for the Situs-provided LTD coverage; provided no evidence that she gave up an existing LTD policy that did not have a pre-existing exclusion; and provided no evidence that but for the alleged misrepresentations, she would have procured her own LTD policy in the private policy marketplace. . ."[154]

46. Plaintiff argues, and the court concludes, that she reasonably relied on Defendants' material misrepresentations to her detriment when she enrolled in the Situs Plan as a new hire and paid premiums for medical coverage that she did not need in order to obtain STD and LTD coverage not subject to exclusions for pre-existing conditions. See Pell, 539 F.3d at 303 (citing Curcio, 33 F.3d at 237).

47. However, Plaintiff has not cited any evidence showing that before enrolling in the Situs Plan she purchased or even considered purchasing STD or LTD coverage. The court is therefore not persuaded that Defendants' pre-enrollment material misrepresentations deprived her of the ability and opportunity to

---

[153]Plaintiff's Motion for Judgment, Docket Entry No. 136, pp. 23-24 ¶ 32. See also Plaintiff's Reply, Docket Entry No. 146, p. 46 ¶ 94.

[154]Defendants' Response to Motion for Judgment, Docket Entry No. 141, pp. 27-28 ¶ 45.

make an educated choice as to whether to seek disability benefits from Defendants or to obtain alternative benefits in the insurance marketplace.  See Smith v. Hartford Insurance Group, 6 F.3d 131, 137 (3rd Cir. 1993) (holding that the plaintiffs' conclusory allegations that they could have obtained alternative coverage, without more, were insufficient to withstand summary judgment). See also Curcio, 33 F.3d at 237 (concluding that evidence the plaintiffs had an actual discussion about the protection being afforded and the ability to purchase additional insurance was sufficient to establish that they had suffered an injury by giving up an opportunity to accommodate their insurance needs through an independent insurance carrier because of their reasonable reliance on the defendants' misrepresentations).

> (b)   Plaintiff Has Not Established by a Preponderance of the Credible Evidence that She Reasonably and Detrimentally Relied on Defendants' Post-Enrollment Representations

48.   Although for the reasons stated above in § III.G.(i)(b), Conclusions of Law 30-44, the court has concluded that none of the thirteen post-enrollment representations about which Plaintiff complains constitute material misrepresentations, in the event that a higher court determines otherwise, the court concludes that Plaintiff has failed to establish by a preponderance of the credible evidence that she reasonably relied on any of those misrepresentations to her detriment.

Plaintiff argues that she reasonably and detrimentally relied on Defendants' post-enrollment misrepresentations by choosing not to return to work on September 10, 2017, when her STD benefits expired.[155] Plaintiff has not cited any evidence showing that when her STD benefits expired on September 9, 2017, she was capable of returning to work. To the contrary, as detailed above in § II.D, Findings of Fact 52-53, and 55, when Plaintiff's STD benefits expired, her doctors had not released her to return to work. The court concludes that even if the post-enrollment representations about which she complains were material misrepresentations, Plaintiff has failed to establish by credible evidence that she reasonably relied on those representations to her detriment.

(iii)    <u>Plaintiff Has Failed to Establish by a Preponderance of the Credible Evidence that Defendants' Material Misrepresentations Were Made Under Extraordinary Circumstances</u>

Plaintiff argues that a preponderance of the evidence establishes that Defendants' material misrepresentations were made under extraordinary circumstances because she is an especially vulnerable plaintiff, because she repeatedly and diligently inquired about the benefits she would be eligible to receive and was repeatedly misled, and because defendants engaged in numerous acts of bad faith.[156]

---

[155]Plaintiff's Motion for Judgment, Docket Entry No. 136, pp. 23-24 ¶¶ 32-33 (citing AR 850).

[156]<u>Id.</u> at 30-33 ¶¶ 45-55. <u>See also</u> Plaintiff's Reply, Docket Entry No. 146, p. 19 ¶ 22.

> (a) Plaintiff Has Failed to Establish by a
> Preponderance of the Credible Evidence that She Was
> an Especially Vulnerable Plaintiff

Plaintiff argues that a preponderance of the evidence establishes that her on-going treatment (temozolomide) and disability during the relevant time period made her particularly vulnerable to being misled. Plaintiff argues that she was also vulnerable because she was not married, had no children, and was solely responsible for her own care.[157]

Citing Simmons v. Outreach Health Community Care Services, L.P., Action No. EP-15-CV-286-KC, 2016 WL 3162147, at *8-*9 (W.D. Tex. June 3, 2016), for its analysis of vulnerability at the time material misrepresentations are made, Defendants argue that

> there is no basis for the Court to conclude that Plaintiff was "particularly vulnerable" at the time of the alleged "pre-enrollment misrepresentations." By Plaintiff's own statement, at the time she attended the enrollment [orientation] she had only recently been hired into a demanding position, which she loved, and that she "had no difficulty performing . . . [either] before or immediately after [her] employment with Situs." AR 847.[158]

In Simmons, 2016 WL 3162147, at *9, the plaintiff alleged that she was disabled from an injury, and that she was especially vulnerable because she was sixty-three years old, unable to work, and for the past three years had been living in homeless shelters or other

---

[157]Id. at 30 ¶ 46.

[158]Defendants' Response to Motion for Judgment, Docket Entry No. 141, p. 28 ¶ 47.

economically-assisted living conditions. The court held that "Plaintiff cannot rely on the fact that she is presently 'especially vulnerable' to establish extraordinary circumstances to support her ERISA estoppel claim." Id. (citing Belmonte, 730 F. Supp. 2d at 606 ("[E]xtraordinary circumstances could exist where misrepresentations were made to an especially vulnerable client.").

Citing Curcio, 33 F.3d at 237-38, Plaintiff replies that vulnerability need not be measured at the time material misrepresentations are made,[159] and that "Defendants' stealthily avoid addressing [Plaintiff's] vulnerability in the context of Defendants' post-enrollment misrepresentations."[160] Plaintiff argues that in Curcio the Third Circuit looked to pre-enrollment statements for evaluating whether the defendant had made material misrepresentations and whether the plaintiffs had reasonably relied on those misrepresentations to their detriment, but looked to post-enrollment statements made to the widowed plaintiff for evaluating whether extraordinary circumstances existed. Plaintiff argues that "whether measured at the time of Defendants' pre-enrollment misrepresentations or at the time of Defendants' post-enrollment misrepresentations[,] her circumstances still rendered her especially vulnerable."[161]

---

[159]Plaintiff's Reply, Docket Entry No. 146, p. 27 ¶ 44.

[160]Id. at 28 ¶ 47.

[161]Id. ¶ 46.

49. The court concludes that Plaintiff has failed to establish by a preponderance of the credible evidence that when Defendants made the pre-enrollment material misrepresentations she was an especially vulnerable plaintiff warranting a conclusion that Defendants' material misrepresentations were made under extraordinary circumstances. As detailed above in § II.C, Findings of Fact 26-32, in October of 2016 when Plaintiff began working for Situs and the pre-enrollment material misrepresentations were made, she was receiving chemotherapy and being monitored for cognitive decline subsequent to surgery and radiation treatment, but she was neither suffering from disabling cognitive decline nor especially vulnerable. In the March 22, 2018, letter that Plaintiff submitted in support of her request for review of the denial of her claim for LTD benefits, Plaintiff stated that "at the time I accepted employment with Situs . . . on October 11, 2016, I believed I had managed to avoid the radiation-toxicities that IMRT therapy threatened since I had no difficulty performing my work-related duties either before or immediately after my employment at Situs."[162] See Simmons, 2016 WL 3162147, *9 (citing Belmonte, 730 F. Supp. 2d at 606).

50. The court concludes that while Plaintiff may have been especially vulnerable when Defendants' made the post-enrollment representations about which she complains, for the reasons stated

---

[162]AR 847.

above in § III.G.(i)(b) and (ii)(b), Conclusions of Law 30-44 and 48, Plaintiff has failed to establish by a preponderance of the credible evidence that Defendants' post-enrollment representations constitute material misrepresentations, or, if they do constitute material misrepresentations, that Plaintiff reasonably and detrimentally relied on any of them.

> (b) Plaintiff Has Failed to Establish by a Preponderance of the Credible Evidence that She Was Repeatedly Misled After She Diligently Inquired about Benefits

Asserting that a "preponderance of the evidence [] establishes that, despite her repeated, diligent inquiries, Defendants repeatedly misled [her],"[163] Plaintiff argues that

> [p]re-enrollment, **all** of Defendants' repeated misrepresentations (and related non-disclosures) were in response to [her] diligent inquiries. . . Defendants also repeatedly made misrepresentations (and repeatedly failed to make related nondisclosures) in response to [her] repeated, diligent post-enrollment inquiries.[164]

Citing Pell, 539 F.3d at 303-05, and Kurz, 96 F.3d at 1553, Defendants acknowledge the Third Circuit has recognized that a series of misrepresentations over an extended course of dealing can constitute extraordinary circumstances for purposes of ERISA estoppel, but argue that such circumstances are not present in this

---

[163]Plaintiff's Motion for Judgment, Docket Entry No. 136, pp. 31-32 ¶ 50.

[164]Id. See also Plaintiff's Reply, Docket Entry No. 146, p. 23 ¶ 33.

case.[165]  In _Pell_ the plaintiff relied to his detriment on the pension estimates he received from his employer over a 15-year period.  Pell presented evidence that he had repeatedly and diligently inquired into his benefits and that the defendant repeatedly responded with material misrepresentations.  The Third Circuit agreed with the district court's ruling that

> repeated misrepresentations over an extended course of dealings between an employer and an employee are sufficient to demonstrate the existence of extraordinary circumstances, when, as here, it is clear that the employee has been diligent in inquiring into the employer's representations, in seeking clarifications about those representations, and in obtaining reaffirmations of those representations.

539 F.3d at 304 (citation omitted).

In _Kurz_ the plaintiff and other employees claimed that their employer made material misrepresentations about the terms of an early retirement plan.  The employees had attended individual retirement interviews in which some of them asked whether changes to the retirement plan were forthcoming, and the employer's retirement counselors answered in the negative when, in fact, management was actively considering an incentive program for early retirement.  The incentive program was implemented shortly after the employees retired and did not apply to them retroactively.  The Third Circuit held that despite the retirement counselors' inaccurate information, there were no extraordinary circumstances

_____

[165]Defendants' Response to Motion for Judgment, Docket Entry No. 141, p. 29 ¶ 50.

because "[t]here is no conduct suggesting that [the employer] sought to profit at the expense of its employees, no showing of repeated misrepresentations over time, [and] no suggestion that plaintiffs are particularly vulnerable." Kurz, 96 F.3d at 1553.

The pre-enrollment material misrepresentations at issue are Perkins' incorrect statements at a benefits orientation, Plaintiff's receipt of different enrollment forms for new hires and those enrolling during the open enrollment period, and Perkins' and Turner's incorrect responses to Plaintiff's questions about the different enrollment forms.[166] The post-enrollment representations about which Plaintiff complains are thirteen representations made over an approximately seven-month period extending from March to September of 2017 during which Defendants processed Plaintiff's claims for STD and LTD benefits.[167] Plaintiff argues that all of Defendants' representations were false or misleading either for what they disclosed or what they failed to disclose.

The facts of this case are distinguishable from those at issue in Pell, 539 F.3d at 303-05, where the Third Circuit concluded that extraordinary circumstances existed because numerous individuals made affirmative misrepresentations in response to the plaintiff's

---

[166]Plaintiff's Motion for Judgment, Docket Entry No. 136, p. 20 ¶ 25(1)-(3) (quoting Plaintiff's Proposed Findings of Fact 129 (1)-(3), Docket Entry No. 128-7, p. 57).

[167]Id. at 20-21 ¶ 25(4)-(16) (quoting Plaintiff's Proposed Findings of Fact 129 (4)-(16), Docket Entry No. 128-7, pp. 57-58).

diligent inquiries about his retirement benefits over more than a decade. The pre-enrollment misrepresentations in this case were made by two individuals on two — or at most three — separate occasions, all of which occurred during October of 2016, the month Plaintiff began her employment with Situs. Because for the reasons stated above in § III.G.(i)(b), the court has already concluded that the post-enrollment representations were not false or materially misleading, those representations do not support Plaintiff's contention that a series of misrepresentations made over an extended course of dealing constitutes an extraordinary circumstance. The facts of this case are comparable to those at issue in Kurz, 96 F.3d at 1553-54, where the court concluded that extraordinary circumstances did not exist because the only misrepresentations at issue were made during individual retirement interviews and in response to questions posed during those interviews.

51. The court concludes that regardless of whether considered individually or collectively, and regardless of whether the court has correctly or incorrectly concluded that the post-enrollment representations about which Plaintiff complains do not constitute material misrepresentations, Plaintiff has failed to establish by a preponderance of the credible evidence that a series of misrepresentations over an extended course of dealing warrant a conclusion that Defendants' material misrepresentations were made

under extraordinary circumstances.  This conclusion is consistent with the Fifth Circuit's opinion in <u>High</u> where the Court stated that "extraordinary circumstances d[id] not exist" when for six years the defendants mistakenly issued the disabled plaintiff a $1,200 monthly disability check rather than the $50 per month to which he was entitled under the policy.  459 F.3d at 580, n. 3.

### (c) Plaintiff Has Failed to Establish by a Preponderance of the Credible Evidence that Defendants Engaged in Acts of Bad Faith

Plaintiff argues that a preponderance of the evidence establishes that Defendants engaged in numerous acts of bad faith. As evidence of Defendants' acts of bad faith, Plaintiff cites "no less than 34 separate categories of bad faith (each often comprising several discrete acts)."[168]  Recognizing that acts of bad faith can constitute extraordinary circumstances, Defendants argue that "the Court has already considered most of these 'bad faith' acts and dismissed them; and Defendants ha[ve] addressed the remaining accusations in its own Exhibit 1 (attached), which lists each allegation of bad faith and Defendants' response."[169] Defendants also argue that

---

[168]<u>Id.</u> at 32 ¶ 52 (citing Exhibit 2, Ms. Bunner's List of Defendants' Bad Acts, Docket Entry No. 136-2).

[169]Defendants' Response to Motion for Judgment, Docket Entry No. 141, p. 36 ¶ 63 (citing Exhibit 1, Docket Entry No. 141, pp. 41-51).

Plaintiff (1) has re-raised every perceived misstep in the claims process even though the Court found that her claim received a full and fair review; (2) continues to complain about the administrative record, even though the Magistrate Judge expressed frustration in having to re-rule again on that issue in her M&R (Doc. 108 at 15-18); (3) believes she should recover benefits based on the actions of Defendants' counsel this year, months and years after her claim was denied.[170]

Citing <u>Curcio,</u> 33 F.3d at 226, Plaintiff argues that "conduct during the claims process **can** form the basis of an ERISA-estoppel claim."[171] Asserting that less than half of Defendants' bad faith acts constituted ERISA claims violations, that Magistrate Judge Johnson erred as to the 14 acts of bad faith that she addressed, and that no court rulings negate the other bad acts of which she complains, Plaintiff argues that Defendants cannot refute the other bad acts.[172]

To establish extraordinary circumstances by acts of bad faith, courts require a showing that the defendant engaged in affirmative acts of fraud or similarly inequitable conduct. <u>See High</u>, 453 F.3d at 580 n. 3. In <u>High</u> the Fifth Circuit cited as an example of a case in which extraordinary circumstances were established by bad acts <u>Rosen v. Hotel & Restaurant Employees & Bartenders Union</u>, 637 F.2d 592, 598 (3d Cir.), <u>cert. denied</u>, 102 S. Ct. 398 (1981). In <u>Rosen</u> the Third Circuit held that a pension fund could not deny

---

[170]<u>Id.</u>

[171]Plaintiff's Reply, Docket Entry No. 146, p. 29 ¶ 51.

[172]<u>Id.</u> at 31-37 ¶¶ 55-67.

benefits to a participant on grounds that the participant's employer failed to pay required contributions after the fund administrator allowed the employee to pay the contributions himself. As an example of a case in which extraordinary circumstances were not established by bad acts, the High Court cited Gridley v. Cleveland Pneumatic Co., 924 F.2d 1310 (3d Cir.), cert. denied, 111 S. Ct. 2856 (1991). In Gridley the Third Circuit upheld an insurer's refusal to pay benefits to the family of a deceased employee who, while continually and totally disabled in the hospital, increased his life insurance coverage under a plan that specifically required employees to return to active, full-time status before the increase would take effect, even though the employer deducted additional amounts from the employee's salary to cover the increased premium. Id. at 1314, 1318-20.

Plaintiffs' 34 categories of alleged acts of bad faith repeat a number of the post-enrollment representations that the court, for the reasons stated above in § III.G.(i)(b), Findings of Fact 30-44, has concluded were not false or materially misleading, and a number of acts that she contends violated ERISA claims procedures and what she characterizes as inequitable actions taken during the litigation of this case. Many of the bad acts that Plaintiff argues constitute violations of ERISA claims procedures have been addressed individually by Magistrate Judge Johnson, who, in Memoranda and Recommendations adopted by the court, concluded that

Defendants substantially complied with the ERISA claims procedures and that the Plaintiff was not denied a full and fair review.[173] Neither representations that are not materially false or misleading, nor violations of ERISA claims procedures that satisfy the substantial compliance standard applicable to such violations, constitute bad acts warranting a conclusion that Defendants' material misrepresentations were made under extraordinary circumstances. Plaintiff has not presented any evidence showing, and the court is not persuaded, that any of the other bad acts of which she complains were affirmative acts of fraud or other inequitable conduct warranting a conclusion that Defendants' material misrepresentations were made under extraordinary circumstances. At most Plaintiff has shown that defendants made mistakes or oversights, and aggressively litigated this action.

52. The court concludes that Plaintiff has failed to establish by a preponderance of the credible evidence that Defendants engaged in any acts of bad faith warranting a conclusion that they made material misrepresentations under extraordinary circumstances.

---

[173]See Memorandum and Recommendation, Docket Entry No. 108, pp. 26-31; and Order Adopting Magistrate Judge's Memorandum and Recommendation, Docket Entry No. 116.

**H.  Attorney's Fees and Costs of Court**

In the last paragraph of the response that Defendants filed to Plaintiff's Motion for Judgment, Defendants assert that "[t]he Court should [] award [them] their attorney's fees and costs of court."[174]  Apart from asserting that they should be awarded attorney's fees and costs, Defendants have not offered any argument why they should be awarded attorney's fees and costs.

53.  In a case governed by ERISA, a district court has discretion to award attorney's fees and costs to either party.  29 U.S.C. § 1132(g)(1).  See also North Cypress Medical Center Operation Co., Limited v. Aetna Life Insurance Co., 898 F.3d 461, 485 (5th Cir. 2018).

54.  In Hardt v. Reliance Standard Life Insurance Co., 130 S. Ct. 2149, 2156 (2010), the Supreme Court held that "a fee claimant need not be a 'prevailing party' to be eligible for an attorney's fee award under § 1132(g)(1)."

55.  Citing Ruckelshaus v. Sierra Club, 103 S. Ct. 3274, 3282 (1983), the Supreme Court held that "a fees claimant must show 'some degree of success on the merits' before a court may award attorney's fees under § 1132(g)(1)."  Hardt, 130 S. Ct. at 2158.

---

[174]Defendant's Response to Motion for Judgment, Docket Entry No. 141, p. 39 ¶ 73.

56. For the reasons set forth above, the court has concluded that Plaintiff's Motion for Judgment should be denied. The court concludes, therefore, that Defendants are eligible for an award of attorney's fees and costs because they have achieved "some degree of success on the merits."

57. If a court determines that a party is eligible for an award of attorney's fees and costs, the court may then examine the facts of the case and determine if a fee award is appropriate. <u>Hardt,</u> 130 S. Ct. at 2158 n. 8.


(i)  <u>Attorney's Fees</u>

58. When determining whether an award of attorney's fees is appropriate, the district court may consider:

> (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorney's fees; (3) whether an award of attorney's fees against the opposing parties would deter other persons acting under similar circumstances; (4) whether the parties requesting attorney's fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions.

<u>Iron Workers Local No. 272 v. Bowen,</u> 624 F.2d 1255, 1266 (5th Cir. 1980). No one of these factors is necessarily decisive, and district courts may make fee determinations without evaluating them as they are discretionary. <u>LifeCare Management Services,</u> 703 F.3d at 847 (citing <u>Hardt,</u> 130 S. Ct. at 2158).

59. Analysis of the _Bowen_ factors in light of the facts of this case do not persuade the court that Defendants' request for attorney's fees should be granted. Defendants have not argued, and the court has not found, that Plaintiff has engaged in any acts of bad faith. This case has been aggressively litigated by both parties for almost three years, and the protracted nature of the case suggests that Defendants have expended substantial sums on attorney's fees. Defendants do not dispute Plaintiff's contentions that she is disabled, unemployed, and the sole source of her own support. Plaintiff is therefore likely to have little if any ability to satisfy an award of attorney's fees, and awarding attorney's fees against her would not likely deter other persons from acting similarly under similar circumstances. The first three _Bowen_ factors, therefore, weigh in Plaintiff's favor. Because ERISA estoppel was the only issue remaining in this case, and because ERISA estoppel is a largely unsettled area of law in this Circuit, the fourth _Bowen_ factor weighs in favor of the Defendants, but only slightly because both parties sought to resolve significant legal questions regarding ERISA. The fifth _Bowen_ weighs in favor of the Defendants. Because three of the five _Bowen_ factors weigh in favor of the Plaintiff, and only one of the _Bowen_ factors weighs solely in Defendants' favor, the court concludes that Defendants' request for attorney's fees will be denied.

(ii) Court Costs

60. The Fifth Circuit has not explicitly determined what reasons are sufficient to warrant reducing or denying costs to a prevailing party. Nevertheless, in considering cost awards under Federal Rule of Civil Procedure 54(d), the Fifth Circuit has held that district courts "may neither deny nor reduce a prevailing party's request for cost without first articulating some good reason for doing so." Schwarz v. Folloder, 767 F.2d 125, 131 (5th Cir. 1985).

61. With regard to cost awards under Rule 54(d), the Fifth Circuit has also stated that district courts may consider:

> (1) the losing party's limited financial resources;
> (2) misconduct by the prevailing party; (3) close and
> difficult legal issues presented; (4) substantial benefit
> conferred to the public; and (5) the prevailing party's
> enormous financial resources.

Pacheco v. Mineta, 448 F.3d 783, 794 (5th Cir.), cert. denied, 127 S. Ct. 299 (2006).

62. The fact that a suit may have been brought in good faith is not, alone, sufficient to justify denying a prevailing party's request for costs. Id. at 794-95.

63. The Fifth Circuit has subsequently held that "reducing or eliminating a prevailing party's cost award based on its wealth — either relative or absolute — is impermissible as a matter of law." Moore v. CITGO Refining & Chemicals Co., 735 F.3d 309, 320 (5th Cir. 2013).

-81-

64. Analysis of the factors courts consider when deciding whether to award court costs leads the court to conclude that each party should bear its own costs. Defendants seek costs without offering any argument or analysis as to why they should be awarded costs. Defendants have made no showing and the court has not found that Plaintiff has engaged in any acts of bad faith. This case has been aggressively litigated by both parties for almost three years. The case involved close and difficult factual and legal issues resolution of which confers a benefit to Defendants, but little benefit to the public. Defendants do not dispute Plaintiff's contentions that she is disabled, unemployed, and the sole source of her own support, and therefore likely to have little if any ability to satisfy an award of costs.

65. Any conclusion of law that should be treated as a finding of fact is hereby adopted as that, and any finding of fact that should be treated as a conclusion of law is hereby adopted as that.[175]

_____

[175]The court has allowed the parties extraordinary leeway in submitting lengthy briefs and other written materials in connection with the pending Motion for Judgment. As the length of this Memorandum Opinion and Order indicates, the court has expended considerable time reading these papers and performing a significant amount of independent research to be as fully informed as possible when addressing the parties' arguments. While, because of the sheer volume of information presented, it is not impossible that some arguments were overlooked, the parties should assume that failure to expressly address a particular argument in this Memorandum Opinion and Order reflects the court's judgment that the argument lacked sufficient merit to warrant discussion. Accordingly, the court strongly discourages the parties from
(continued...)

# IV. <u>Conclusions and Orders</u>

Pursuant to the Findings of Fact and Conclusions of Law 1-52 entered herewith, Plaintiff's Motion for Judgment, Docket Entry No. 136, is **DENIED**.

Pursuant to Conclusions of Law 53-64, entered herewith, Defendants' request for attorney's fees and costs is **DENIED**.

**SIGNED** at Houston, Texas, on this 25th day of May, 2021.

                              SIM LAKE
               SENIOR UNITED STATES DISTRICT JUDGE

---

[175](...continued)
argument lacked sufficient merit to warrant discussion. Accordingly, the court strongly discourages the parties from seeking reconsideration based on arguments they have previously raised or that they could have raised.